# INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO *v.* DAVIS

No. 85–217.   Argued February 25, 1986—Decided May 27, 1986

WHITE, J., delivered the opinion of the Court, in Part I of which all other Members joined, in Part II of which BURGER, C. J., and BRENNAN, MARSHALL, and BLACKMUN, JJ., joined, and in Part III of which all other Members, except BLACKMUN, J., joined. REHNQUIST, J., filed an opinion concurring in part and concurring in the judgment, in which POWELL, STEVENS, and O'CONNOR, JJ., joined, *post*, p. 399. BLACKMUN, J., filed an opinion concurring in part and dissenting in part, *post*, p. 403.

*Charles R. Goldburg* argued the cause for appellant. With him on the briefs was *Thomas W. Gleason*.

*Bayless E. Biles* argued the cause and filed a brief for appellee.*

JUSTICE WHITE delivered the opinion of the Court.

The opinion in *San Diego Building Trades Council* v. *Garmon*, 359 U. S. 236 (1959), set forth a general standard for determining when state proceedings or regulations are pre-empted by the provisions of the National Labor Relations Act (NLRA or Act), see 29 U. S. C. § 151 *et seq.* (1982 ed. and Supp. II): Subject to exception only in limited circumstances, "[w]hen an activity is arguably subject to § 7 or § 8 of the Act [29 U. S. C. § 157 or § 158], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." 359 U. S., at 245. This general standard has been applied in a multitude of cases decided since *Garmon*, and it must be applied again today. Before addressing that question, however, we must consider the very nature of such pre-emption—whether *Garmon* pre-emption is in the nature of an affirmative de-

---

*Briefs of *amici curiae* urging affirmance were filed for the Council of State Governments et al. by *Benna Ruth Solomon, Beate Bloch, Zachary D. Fasman,* and *Clifton S. Elgarten;* and for the National Right to Work Legal Defense Foundation, Inc., by *Glenn M. Taubman.*

fense that must be asserted in the trial court or be considered forever waived or whether it is in the nature of a challenge to a court's power to adjudicate that may be raised at any time.

## I

Appellee Larry Davis was formerly employed by Ryan-Walsh Stevedoring Co. in Mobile, Alabama. At the times relevant to the events that gave rise to this suit, he was a ship superintendent or trainee ship superintendent. The ship superintendents apparently served as the immediate superiors of the longshoremen employed by Ryan-Walsh. They were on salary, however, and their compensation was generally lower than that received by the longshoremen, who worked on an hourly basis.

In early 1981, Ben Trione, one of the ship superintendents who worked for Ryan-Walsh, contacted appellant International Longshoremen's Association (ILA or Union), a union that represents longshoremen and other employees on the waterfront, to discuss the possibility of organizing the superintendents and affiliating with the Union. Although the parties here dispute the content of the conversations that occurred at this stage between Trione and the ILA representatives regarding the ship superintendents and their eligibility for union membership, it is undisputed that a meeting of the superintendents was organized by Trione and attended by Benny Holland, an ILA official from Houston, Texas.

At this meeting, several of the superintendents expressed a fear of being discharged for participating in union-related activities. According to Davis' witnesses, Holland's response to this was to reassure them that the Union would get them their jobs back with backpay if that happened. According to Holland, however, Holland's response was that they would be protected in that manner only if they were determined not to be supervisors under the Act and that he did

not know whether or not they would be considered supervisors.[1] Holland further testified that he had submitted this issue to the Union's lawyers and had not received a definitive opinion from them by the time of the meeting. The meeting, according to all witnesses, resulted in a number of the ship superintendents, including Davis, signing pledge cards and a union charter application with the ILA.[2]

On the day following the organizational meeting, Ryan-Walsh fired Trione. Trione contacted the ILA, which supplied him with an attorney. The attorney filed an unfair labor practice charge against Ryan-Walsh with the National Labor Relations Board, alleging that Trione was an employee under the Act and that Ryan-Walsh had violated § 8(a)(1) and § 8(a)(3) of the Act by discharging him for participating in

---

[1] Under § 2(11) of the Act, 61 Stat. 138, a supervisor is defined as follows:

"The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." 29 U. S. C. § 152(11).

Supervisors as defined in this section are expressly not considered to be employees as defined in § 2(3) of the Act. 29 U. S. C. § 152(3).

Only employees as defined in § 2(3), however, are given rights under § 7 of the Act, 61 Stat. 140, 29 U. S. C. § 157, which provides:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3)."

[2] Apparently, however, an insufficient number of cards was obtained, see 29 U. S. C. § 159(a), and no representation petition was filed with the NLRB.

union activities. See 29 U. S. C. §§ 158(a)(1), (3).[3] The NLRB's Regional Director, however, determined that Trione was a supervisor under the Act and declined to issue a complaint.[4] Trione did not, as he had a right to do, appeal this determination to the NLRB General Counsel. See 29 CFR § 102.19 (1985). Shortly thereafter, Davis was also dis-

---

[3] Section 8(a) of the Act, 49 Stat. 452, in turn, provides in relevant part:
"It shall be an unfair labor practice for an employer—
"(1) To interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7.

.           .           .           .           .

"(3) By discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization. . . ." 29 U. S. C. §§ 158(a)(1), (3).

[4] Under the Act, an employer does not commit an unfair labor practice under § 8(a)(3) if it fires a supervisor for union-related reasons: An employer "is at liberty to demand absolute loyalty from his supervisory personnel by insisting, on pain of discharge, that they neither participate in, nor retain membership in, a labor union." *Florida Power & Light Co.* v. *Electrical Workers*, 417 U. S. 790, 812 (1974). See also *Operating Engineers* v. *Jones*, 460 U. S. 669, 671, n. 1 (1983); *Beasley* v. *Food Fair of North Carolina, Inc.*, 416 U. S. 653, 656–657 (1974). An employer may, however, *allow* its supervisory employees to join a union. See *Florida Power & Light, supra*, at 808, 813. Even though supervisors are not covered by the Act, a discharge may constitute a § 8(a)(1) unfair labor practice if it infringes on the § 7 rights of the employer's nonsupervisory employees. See, *e. g.*, *Parker-Robb Chevrolet, Inc.*, 262 N. L. R. B. 402 (1982), aff'd *Automobile Salesmen's Union Local 1095* v. *NLRB*, 229 U. S. App. D. C. 105, 711 F. 2d 383 (1983) (summarizing post-1982 standard for finding violations of the Act in disciplinary actions taken against supervisors).

In response to Trione's complaint, the Regional Director stated his conclusions as follows:

"As a result of the investigation, it appears that further proceedings on the charge [of a violation under Section 8 of the Act] are not warranted inasmuch as the evidence disclosed that Mr. Trione was employed as a supervisor within the meaning of Section 2(11) of the Act. For this reason, Section 8(a)(3) would not be applicable to his discharge inasmuch as 'supervisors' are specifically excluded from the definition of employee under the Act. Nor is there sufficient evidence to establish that Mr. Trione's discharge violated Section 8(a)(1) of the Act. I am, therefore, refusing to issue a complaint in this matter." App. 62a–63a.

charged by Ryan-Walsh, apparently for his continued efforts to organize the ship superintendents and to join the Union.

In response to his discharge, Davis filed this suit against the ILA in the Circuit Court of Mobile County, alleging fraud and misrepresentation under Ala. Code § 6–5–101 (1975).[5] The case proceeded to trial, and a jury entered a verdict in Davis' favor in the amount of $75,000. Throughout the trial, the Union defended the suit on the merits, raising no issue that the suit was pre-empted by the NLRA. In its motion for judgment notwithstanding the verdict, however, the ILA raised for the first time a claim that the state court lacked jurisdiction over the case because the field had "been pre-empted by federal law and federal jurisdiction." App. 96a. The Circuit Court denied the Union's motion without opinion and entered judgment on the jury's verdict.

On appeal to the Supreme Court of Alabama, the ILA argued that pre-emption was not a waivable defense and that the state fraud and misrepresentation action was pre-empted under *Garmon*. Although acknowledging that other state courts had adopted the ILA's position that NLRA pre-emption was nonwaivable,[6] the Alabama court held that "[i]t is not the circuit court's subject matter jurisdiction to adjudicate a damage claim for the tort of fraud—even if it arises in the context of a labor-related dispute—that is pre-empted. Rather, it is the state court's *exercise* of that power that is subject to preemption." 470 So. 2d 1215, 1216 (1985). The court's view was that as a state court of general jurisdiction the Circuit Court had had subject-matter jurisdiction over this ordinary tort claim for damages. As a waivable defense, the pre-emption claim was required under Alabama

---

[5] That section provides: "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."

[6] See, *e. g.*, *Consolidated Theatres, Inc.* v. *Theatrical Stage Employees Union, Local 16*, 69 Cal. 2d 713, 447 P. 2d 325 (1968).

law to be affirmatively pleaded. Since it was not so pleaded, it was deemed waived.[7]

The Alabama Supreme Court, although holding that the ILA's pre-emption claim had been waived, stated in a footnote that if it had had occasion to reach the merits, it would have found no pre-emption:

> "The instant facts fall squarely within the 'peripheral concern' exception to federal preemption of state jurisdiction of labor-related disputes. *San Diego Building Trades Council* v. *Garmon,* 359 U. S. 236, 243–44 (1959). The National Labor Relations Board has already determined that an employer's supervisors are not protected by the Labor Management Relations Act. Thus, in this case, [Davis] has no remedy before the NLRB, and this dispute, although somewhat labor-related, is, at most, only of 'peripheral concern' to the NLRB. See, *e. g., Linn* v. *United Plant Guard Workers Local 114,* 383 U. S. 53 (1966)." *Id.,* at 1216–1217, n. 2 (citations omitted).

The Alabama Supreme Court accordingly affirmed the judgment against the Union. The Union appealed to this Court; Davis moved to dismiss the appeal on the ground that the decision below rested on an adequate and independent state ground because the Alabama Supreme Court's decision was based on an application of a state procedural rule. The ILA's submission, however, raised a substantial question whether reliance on the procedural rule rested on an erroneous view of the scope of *Garmon* pre-emption, a matter of

---

[7] In reaching this conclusion, the Alabama Supreme Court noted that Alabama Rule of Civil Procedure 8(c) requires that affirmative defenses be specifically asserted and concluded that although pre-emption was not specifically listed as an affirmative defense under Rule 8 "it quite obviously falls within the nature of those defenses specifically listed." 470 So. 2d, at 1216, n. 1. See also *Powell* v. *Phenix Federal Savings & Loan Assn.,* 434 So. 2d 247 (Ala. 1983) (holding claim of pre-emption of state-law affirmative defenses to be deemed waived if not affirmatively pleaded).

federal law, and hence whether the procedural ground relied on was adequate and independent. We noted probable jurisdiction, 474 U. S. 899 (1985).[8]

## II

### A

Given the reliance of the Alabama Supreme Court on its procedural rule governing the presentation of affirmative defenses, we first decide whether that rule in this case represents an independent and adequate state ground supporting the judgment below. If it does, our review is at an end, for we have no authority to review state determinations of purely state law. Nor do we review federal issues that can have no effect on the state court's judgment. See, *e. g.*, *Zacchini* v. *Scripps-Howard Broadcasting Co.*, 433 U. S. 562, 566 (1977); *Herb* v. *Pitcairn*, 324 U. S. 117, 125–126 (1945); *Fox Film Corp.* v. *Muller*, 296 U. S. 207, 210 (1935). The inquiry into the sufficiency of the asserted state ground, however, is one that we undertake ourselves. See *Michigan* v. *Long*, 463 U. S. 1032, 1038 (1983); *Abie State Bank* v. *Bryan*, 282 U. S. 765, 773 (1931).

In concluding that the Union's pre-emption claim was procedurally barred, the Alabama Supreme Court first held that because the Mobile County Circuit Court, as a state court of general jurisdiction, had subject-matter jurisdiction over the simple tort claim of misrepresentation, there could be no pre-emption of that court's actual jurisdiction. Only the exercise of that jurisdiction could be pre-empted.

This explanation has a certain logic to it; but the point is not whether *state* law gives the state courts jurisdiction over particular controversies but whether jurisdiction provided by

---

[8] Assuming, as we decide *infra*, that the judgment below did not rest on an independent and adequate state ground and that we therefore have jurisdiction over this case, this is a proper appeal under 28 U. S. C. § 1257(2), since the Alabama Supreme Court upheld a state statute, § 6–5–101, as applied, against a claim of federal pre-emption.

state law is itself pre-empted by *federal* law vesting exclusive jurisdiction over that controversy in another body. It is clearly within Congress' powers to establish an exclusive federal forum to adjudicate issues of federal law in a particular area that Congress has the authority to regulate under the Constitution. See, *e. g., Kalb* v. *Feuerstein,* 308 U. S. 433 (1940). Whether it has done so in a specific case is the question that must be answered when a party claims that a state court's jurisdiction is pre-empted. Such a determination of congressional intent and of the boundaries and character of a pre-empting congressional enactment is one of federal law. Pre-emption, the practical manifestation of the Supremacy Clause, is always a federal question.

If the Alabama procedural ruling under state law implicates an underlying question of federal law, however, the state law is not an independent and adequate state ground supporting the judgment:

> "[W]hen resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law, and our jurisdiction is not precluded. . . . In such a case, the federal-law holding is integral to the state court's disposition of the matter, and our ruling on the issue is in no respect advisory." *Ake* v. *Oklahoma,* 470 U. S. 68, 75 (1985) (citing *Herb* v. *Pitcairn, supra,* at 126; *Enterprise Irrigation District* v. *Farmers Mutual Canal Co.,* 243 U. S. 157, 164 (1917)).

To determine the sufficiency of the state procedural ground relied upon by the Alabama Supreme Court we must ascertain whether that court correctly resolved the antecedent federal question regarding the nature of *Garmon* pre-emption under the NLRA. Specifically, the question is whether *Garmon* pre-emption is a waivable affirmative defense such that a state court may adjudicate an otherwise pre-empted claim if the *Garmon* defense is not timely raised

or whether *Garmon* pre-emption is a nonwaivable foreclosure of the state court's very jurisdiction to adjudicate.

## B

The Court's opinion in *Garner* v. *Teamsters*, 346 U. S. 485, 490–491 (1953), articulated what has come to be the accepted basis for the broadly pre-emptive scope of the NLRA:

> "Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. . . . A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law."

Building on this cornerstone, the *Garmon* Court went on to set out the now well-established scope of NLRA pre-emption. Given the NLRA's "complex and interrelated federal scheme of law, remedy, and administration," 359 U. S., at 243, the Court held that "due regard for the federal enactment requires that state jurisdiction must yield," *id.*, at 244, when the activities sought to be regulated by a State are clearly or may fairly be assumed to be within the purview of § 7 or § 8. The Court acknowledged that "[a]t times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections." *Ibid.* Even in such ambiguous

situations, however, the Court concluded that "courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board." *Id.*, at 244–245. Thus, the Court held that "[w]hen an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Id.*, at 245.

In *Construction Laborers* v. *Curry*, 371 U. S. 542 (1963), we considered the application of these principles to a situation in which the Georgia courts had awarded relief based on a complaint that contained allegations that made out "at least an arguable violation of § 8(b)." *Id.*, at 546. There, we reviewed a claim that "the subject matter of [the] suit was within the exclusive jurisdiction of the National Labor Relations Board," *id.*, at 543, and held that, even though the state court was authorized to adjudicate the claim as a matter of state law, the state court "clearly exceeded its power" in awarding relief on the complaint. *Id.*, at 548. Specifically, "the state court had no jurisdiction to issue an injunction or to adjudicate this controversy, which lay within the exclusive powers of the National Labor Relations Board." *Id.*, at 546–547.

That our conclusion was in fact jurisdictional was accentuated by our discussion of the procedural context in which the case arose. The state court had awarded a temporary injunction only, and a permanent order had not yet been issued. We rejected, however, the argument that the judgment was not yet final for purposes of our own jurisdiction:

"[W]e believe our power to review this case rests upon solid ground. The federal question raised by petitioner in the Georgia court, and here, is whether the Georgia courts had power to proceed with and determine this controversy. The issue ripe for review is not whether a

Georgia court has erroneously decided a matter of federal law in a case admittedly within its jurisdiction nor is it the question of whether federal or state law governs a case properly before the Georgia courts. What we do have here is a judgment of the Georgia court finally and erroneously asserting its jurisdiction to deal with a controversy which is beyond its power and instead is within the exclusive domain of the National Labor Relations Board." *Id.*, at 548 (citations omitted).

See also *Belknap, Inc.* v. *Hale*, 463 U. S. 491, 497–498, n. 5 (1983). *Curry* made clear that when a state proceeding or regulation is claimed to be pre-empted by the NLRA under *Garmon*, the issue is a choice-of-forum rather than a choice-of-law question. As such, it is a question whether the State or the Board has jurisdiction over the dispute. If there is pre-emption under *Garmon*, then state jurisdiction is extinguished.[9]

Since *Garmon* and *Curry*, we have reiterated many times the general pre-emption standard set forth in *Garmon* and the jurisdictional nature of *Garmon* pre-emption; we have also reaffirmed that our decisions describing the nature of *Garmon* pre-emption and defining its boundaries have rested on a determination that in enacting the NLRA Congress intended for the Board generally to exercise exclusive jurisdiction in this area. See, *e. g., Journeymen* v. *Borden*, 373 U. S. 690, 698 (1963); *Iron Workers* v. *Perko*, 373 U. S. 701, 708 (1963); *Liner* v. *Jafco, Inc.*, 375 U. S. 301, 309–310 (1964); *Linn* v. *Plant Guard Workers*, 383 U. S. 53, 60 (1966); *Vaca* v. *Sipes*, 386 U. S. 171, 179 (1967); *Motor Coach Em-*

---

[9] We note that this conclusion derives from congressional intent as delineated in our prior decisions. Thus, our decision today does not apply to pre-emption claims generally but only to those pre-emption claims that go to the State's actual adjudicatory or regulatory power as opposed to the State's substantive laws. The nature of any specific pre-emption claim will depend on congressional intent in enacting the particular pre-empting statute.

ployees v. *Lockridge*, 403 U. S. 274, 285–291 (1971); *Farmer* v. *Carpenters*, 430 U. S. 290, 296–297, 305 (1977); *Sears, Roebuck & Co.* v. *Carpenters*, 436 U. S. 180, 188–190 (1978); *Operating Engineers* v. *Jones*, 460 U. S. 669, 676 (1983); *Belknap, Inc.* v. *Hale, supra*, at 510–511; *Brown* v. *Hotel Employees*, 468 U. S. 491, 502–503 (1984); *Wisconsin Dept. of Industry, Labor and Human Relations* v. *Gould Inc.*, 475 U. S. 282, 286 (1986).

Davis does not seriously dispute this conclusion—at least as a general matter. He concedes, in fact, that "when a particular issue has been placed by Congress within the primary and exclusive jurisdiction of the NLRB, a state court will have no subject matter jurisdiction to adjudicate the issue. In such cases, any judgment issued by the state court will be *void ab initio* because subject matter jurisdiction is preempted." Brief for Appellee 13. Davis notes, however, that this Court has acknowledged that *Garmon* does not preempt "all local regulation that touches or concerns in any way the complex interrelationships between employees, employers, and unions; obviously, much of this is left to the States." *Lockridge, supra*, at 289. Specifically, Davis points to *Garmon*'s own recognition that some controversies that are arguably subject to § 7 or § 8 are not pre-empted:

> "[D]ue regard for the presuppositions of our embracing federal system . . . has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. Or where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." 359 U. S., at 243–244 (citations omitted).

Both before and since *Garmon* we have identified claims that fall within one or both these articulated exceptions. See, *e. g., Belknap, Inc.* v. *Hale, supra; Farmer* v. *Carpen-*

*ters, supra; Linn* v. *Plant Guard Workers, supra; Automobile Workers* v. *Russell*, 356 U. S. 634 (1958); *Machinists* v. *Gonzales*, 356 U. S. 617 (1958); *Youngdahl* v. *Rainfair, Inc.*, 355 U. S. 131 (1957); *Construction Workers* v. *Laburnum Construction Corp.*, 347 U. S. 656 (1954).[10]    But these cases serve only as more precise demarcations of the *scope* of *Garmon* pre-emption.    They have not redefined the *nature* of that pre-emption in any way.    A claim of *Garmon* pre-emption is a claim that the state court has no power to adjudicate the subject matter of the case, and when a claim of *Garmon* pre-emption is raised, it must be considered and resolved by the state court.    Consequently, the state procedural rule relied on by the Alabama Supreme Court to support the judgment below was not a sufficient state ground, and the Union was and is entitled to an adjudication of its pre-emption claim on the merits.[11]

---

[10] We have also acknowledged an exception for conduct that is arguably protected under § 7 where the injured party has no means of bringing the dispute before the Board.    See *Sears, Roebuck & Co.* v. *Carpenters*, 436 U. S. 180 (1978).    See also *Motor Coach Employees* v. *Lockridge*, 403 U. S. 274, 325–332 (1971) (WHITE, J., dissenting); *Longshoremen* v. *Ariadne Shipping Co.*, 397 U. S. 195, 201–202 (1970) (WHITE, J., concurring).

[11] Our reasoning and decision here are supported by this Court's decision in *Kalb* v. *Feuerstein*, 308 U. S. 433 (1940).    In that case, the Court faced an issue involving state jurisdiction in a bankruptcy case that was strikingly similar to the issue presented by this case.    There, a state court had entered a judgment of foreclosure against the appellants.    Although the appellants had a petition pending concurrently in the bankruptcy court, the state courts rejected their challenge that the foreclosure was invalid because of the pending bankruptcy proceedings on the basis of a procedural default.    In the face of the appellees' assertion that the procedural default presented an adequate nonfederal ground for the State's judgment, however, this Court accepted the appellants' contention that federal law itself "oust[ed] the jurisdiction of the state court" during the pendency of the bankruptcy proceeding.    The state judgment thus "was not merely erroneous but was beyond [the state court's] power, void, and subject to collateral attack."    *Id.*, at 438.    The Court based this holding on Congress' exclusive right to regulate bankruptcy, which gave it the power to vest jurisdiction over bankruptcy proceedings exclusively in one forum and to withdraw

## III

As the *Garmon* line of cases directs, the pre-emption inquiry is whether the conduct at issue was arguably protected or prohibited by the NLRA. That much is clear. There is also no dispute that if Davis was a supervisor, he was legally fired,[12] the Union misspoke if it represented that there was legal redress for the discharge, and there is no pre-emption. But if Davis was an employee, his discharge for union activities was an unfair practice, the Union was protected in its attempt to interest him in the Union, and it did not err in representing that if he was discharged for joining the Union, there would be a remedy. We should inquire, then, whether Davis was arguably an employee, rather than a supervisor. If he was, the issue was to be initially decided by the NLRB, not the state courts.

The precondition for pre-emption, that the conduct be "arguably" protected or prohibited, is not without substance. It is not satisfied by a conclusory assertion of pre-emption and would therefore not be satisfied in this case by a claim,

---

that jurisdiction from all other forums, and Congress' statutory exercise of that right.

Given our longstanding interpretation of congressional intent regarding NLRA pre-emption under *Garmon*, this case is in all relevant respects the same as *Kalb*. Based on its constitutional power to regulate interstate commerce, Congress has created by statute a uniform body of laws governing labor relations and has vested in the National Labor Relations Board the exclusive jurisdiction over administration of those laws. And, although the exclusive nature of this jurisdiction was not explicitly noted by Congress, this Court has held that such exclusivity was intended by Congress. Enactment of such exclusive jurisdiction must, by operation of the Supremacy Clause, pre-empt conflicting state-court jurisdiction. That the entity chosen to administer those laws is administrative rather than judicial, as in *Kalb*, does not alter the pre-emptive effect of the federal law. Consequently, a procedural default in state court does not protect a state-court judgment from pre-emption.

[12] There is no allegation or evidence here that Davis' discharge, assuming he was a supervisor, was aimed at Ryan-Walsh's nonsupervisory employees or that it interfered with those employees' § 7 rights. See n. 4, *supra*.

without more, that Davis was an employee rather than a supervisor. If the word "arguably" is to mean anything, it must mean that the party claiming pre-emption is required to demonstrate that his case is one that the Board could legally decide in his favor. That is, a party asserting pre-emption must advance an interpretation of the Act that is not plainly contrary to its language and that has not been "authoritatively rejected" by the courts or the Board. *Marine Engineers* v. *Interlake S.S. Co.*, 370 U. S. 173, 184 (1962). The party must then put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such an interpretation. In this case, therefore, because the pre-emption issue turns on Davis' status, the Union's claim of pre-emption must be supported by a showing sufficient to permit the Board to find that Davis was an employee, not a supervisor. Our examination of the record leads us to conclude that the Union has not carried its burden in this case.

Expecting that the Union would put its best foot forward in this Court, we look first at its submission here that there is an arguable case for pre-emption. The Union's brief states that its conduct was protected by federal law if Davis was an employee, that in order to find the Union liable the jury must have found that Davis was a supervisor, and that "the state law controversy of whether the Union made a misrepresentation and the federal controversy of whether the superintendents were in fact supervisors are 'the same in a fundamental respect.'" Brief for Appellant 16 (quoting *Operating Engineers* v. *Jones*, 460 U. S., at 682). So far, the argument proceeds in the right direction. As for the critical issue of whether Davis is an employee or a supervisor, the Union asserts only that "[a]bsent a clear determination by the NLRB that the ship superintendents are supervisors rather than employees, superintendents are arguably employees and the state is preempted from applying its law." Brief for Appellant 13. In making this contention, the ILA

relies on our cases indicating that pre-emption can be avoided if an individual's supervisory status has been determined "'with unclouded legal significance.'" *Hanna Mining Co.* v. *Marine Engineers*, 382 U. S. 181, 190 (1965) (quoting *Garmon*, 359 U. S., at 246). See also *Jones, supra,* at 680. It does not undertake any examination of Davis' duties as a ship superintendent. It makes no attempt to show that Davis was more like an employee than a supervisor as those terms are defined in §§ 2(1) and (11) of the Act, 29 U. S. C. §§ 152(1) and (11).[13] It points to no evidence in the record indicating that Davis was not a supervisor. It does not argue that Davis' job was different from Trione's or that the Regional Director was wrong in finding that Trione was a supervisor. Its sole submission is that Davis was arguably an employee because the Board has not decided that he was a supervisor.

We cannot agree that Davis' arguable status as a supervisor is made out by the mere fact that the Board has not finally determined his status. The lack of a Board decision in no way suggests how it would or could decide the case if it had the opportunity to do so. To accept the Union's submission would be essentially equivalent to allowing a conclusory claim of pre-emption and would effectively eliminate the necessity to make out an arguable case. The better view is that those claiming pre-emption must carry the burden of showing at least an arguable case before the jurisdiction of a state court will be ousted.

Moreover, neither *Garmon* nor *Hanna Mining* supports the Union's position. *Garmon* itself is the source of the arguably protected or prohibited standard for pre-emption. The Court stated, 359 U. S., at 244:

> "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by

---

[13] Whether a particular employee is a supervisor under the Act depends on his or her actual duties, not on his or her title or job classification. See, *e. g., Winco Petroleum Co.*, 241 N. L. R. B. 1118, 101 LRRM 1100 (1979).

§ 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of the federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law."

Later the Court said: "When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence" of the Board. *Id.*, at 245. Of course, the Court explained, the Board might decide the case one way or the other, but in the "absence of the Board's clear determination that an activity is neither protected or prohibited," *id.*, at 246, it is not for the courts to decide the case. It is apparent from these passages that a court first must decide whether there is an arguable case for pre-emption; if there is, it must defer to the Board, and only if the Board decides that the conduct is not protected or prohibited may the court entertain the litigation. Nothing in *Garmon* suggests that an arguable case for pre-emption is made out simply because the Board has not decided the general issue one way or the other.

*Hanna Mining* also does nothing for the Union's submission. The Court there, relying on *Garmon*, held that there was no pre-emption because the Board or its General Counsel had in fact adversely decided the issues on which the claim of pre-emption rested. Obviously, no inference may be drawn from that decision that a party makes out a case for pre-emption by merely asserting that the issue involved has not been decided by the Board. The Union's position is also negated by *Interlake S.S. Co.*, *supra*, where the Court found pre-emption only after examining the facts and deciding "whether the evidence in this case was sufficient to show that either of [the organizations] was arguably a 'labor organization' within the contemplation of § 8(b)." *Id.*, at 178. The Court went on to hold that while there was persuasive evi-

dence that the marine engineers were supervisors, the Board had nevertheless effectively decided that the union involved was a labor organization within the meaning of the Act. While agreeing with the principles announced by the Court, Justice Douglas dissented because he had a different view of the facts of the case. Consequently, a party asserting pre-emption must put forth enough evidence to enable a court to conclude that the activity is arguably subject to the Act.

Here, the Union points to no evidence in support of its assertion that Davis was arguably an employee. The Union's claim of pre-emption in the state courts was also devoid of any factual or legal showing that Davis was arguably not a supervisor but an employee. In this respect, its brief in the Alabama Supreme Court was similar to its brief here, and its post-trial motion for judgment in the trial court contained no more than a conclusory assertion that state jurisdiction was pre-empted. Until that motion, no claim of pre-emption had been made out, but whether Davis was a supervisor or an employee was a relevant inquiry in making out his case. He alleged in his complaint that he was a supervisor. The Union answered that it was without sufficient information to form a belief as to whether or not he was. Moreover, in moving for summary judgment or for directed verdict at the close of Davis' case and at the close of all the evidence the Union did not assert that Davis was an employee, not a supervisor, let alone point to any evidence to support such a claim.[14] In sum, the Union has not met its burden of showing that the conduct here was arguably subject to the Act.

## IV

We hold that where state law is pre-empted by the NLRA under *Garmon* and our subsequent cases, the state courts lack the very power to adjudicate the claims that trigger pre-

---

[14] Although it is not our task *sua sponte* to search the record for evidence to support the Union's pre-emption claim, we find nothing in the record to make out even a colorable case for holding that Davis was not a supervisor.

emption. Thus, the Alabama Supreme Court's holding that the ILA had waived its pre-emption claim by noncompliance with state procedural rules governing affirmative defenses did not present an independent and adequate state ground supporting the judgment below, and that court erred in declining to address that claim on the merits. On the merits, we reject the ILA's characterization of our prior cases as holding that the mere lack of a conclusive determination by the Board that an activity is without the purview of the Act renders that activity arguably subject to the Act. Rather, we reaffirm our previously expressed view that the party asserting pre-emption must make an affirmative showing that the activity is arguably subject to the Act and we therefore affirm the judgment of the Alabama Supreme Court.

*So ordered.*

JUSTICE REHNQUIST, with whom JUSTICE POWELL, JUSTICE STEVENS, and JUSTICE O'CONNOR join, concurring in part and concurring in the judgment.

The Court holds that appellant Union's federal pre-emption claim must be considered on the merits by Alabama courts even though the Union never once raised the claim in the Alabama trial court until a post-trial motion following an adverse jury verdict. By allowing a defendant to save its pre-emption claim until after it sees the verdict, this ruling poses a sufficient threat to orderly judicial proceedings that it can be justified only if Congress has mandated such a result. Because Congress clearly has not mandated any such result, I disagree with Part II of the Court's opinion.

Appellee Davis sued the Union in the Circuit Court of Mobile County alleging fraud and misrepresentation. Davis had been first a trainee ship superintendent and then a ship superintendent in the employ of Ryan-Walsh Stevedoring Co. in Mobile. Although the ship superintendents were theoretically superior to the longshoremen, they were paid

less salary and their compensation was generally lower than that of the longshoremen, who worked for hourly wages.

One of Davis' fellow ship superintendents contacted the Union to see about the possibility of organizing the superintendents and affiliating with the Union. At a meeting of the superintendents to discuss that possibility, several of them expressed a fear of being discharged for participating in union-related activities. Testimony at trial indicated that one Benny Holland, a union representative, had assured the superintendents that the Union would get them their jobs back with backpay if they were discharged. As a result of the meeting, a number of the ship superintendents including Davis signed pledge cards and an application for a union charter from the ILA.

Sure enough, first another superintendent and then Davis were discharged by Ryan-Walsh, and the Union did not succeed in getting them their jobs back, with or without backpay. Davis then filed this suit, which the Union defended on the merits throughout the trial; at the conclusion of the trial the jury returned a verdict in Davis' favor for $75,000. Only at this point, in a motion for judgment notwithstanding the verdict, did the Union first raise its pre-emption claim, a technique that the Court now sanctions.

The Supreme Court of Alabama refused to consider the claim, observing that Alabama Circuit Courts are courts of general jurisdiction having authority to try, *inter alia,* cases involving fraud and misrepresentation. That court held that the Union's pre-emption claim was an affirmative defense under the Alabama Rules of Civil Procedure, and had to be affirmatively pleaded in order to be considered. I agree with this Court that Congress could, if it wished, forbid Alabama to impose any such procedural rule, but I am convinced that Congress has done no such thing.

The Court relies on what it apparently considers to be the similar case of *Kalb* v. *Feuerstein,* 308 U. S. 433 (1940). There Congress *did* provide quite explicitly that state courts

should be deprived of jurisdiction in cases where mortgage foreclosure proceedings in those courts were also the subject of a petition in bankruptcy in federal court. Congress said:

> "'(o) Except upon petition made to and granted by the judge after hearing and report by the conciliation commissioner, the following proceedings shall not be instituted, or if instituted at any time prior to the filing of a petition under this section, shall not be maintained, in any court or otherwise, against the farmer or his property, at any time after the filing of the petition under this section, and prior to the confirmation or other disposition of the composition or extension proposal by the court:
>
> . . . . .
>
> "'(2) proceedings for foreclosure of a mortgage on land . . . or for recovery of possession of land.'" *Id.*, at 440–441 (quoting Frazier-Lemke Act) (emphasis deleted).

In the present case, by contrast, Congress has never said a word about pre-emption of state-court jurisdiction. This Court, in a long line of cases beginning with *Garner* v. *Teamsters*, 346 U. S. 485 (1953), has enunciated a judicial doctrine of pre-emption in labor relations cases based on the implied intent of Congress. But as the Court noted in *Garner:*

> "The national Labor Management Relations Act, as we have before pointed out, leaves much to the states, though Congress has refrained from telling us how much. We must spell out from conflicting indications of congressional will the area in which state action is still permissible." *Id.*, at 488 (footnote omitted).

Thus when the Court speaks of the pre-emption of "subject-matter jurisdiction" here, it must rely on a far more dimly refracted version of congressional intent than did the *Kalb* Court: not what Congress said, but what this Court thinks Congress might have said had it been confronted with

the situation. This is far too thin a reed to support the perverse application of the doctrine in the present case.

The Court also places undue reliance upon its opinion in *Construction Laborers* v. *Curry*, 371 U. S. 542 (1963). There the claim of federal pre-emption had been properly presented by the union at every stage of Georgia proceedings. This Court, on direct review of a judgment of the Supreme Court of Georgia, held that Congress had denied to the Georgia courts the authority to issue an injunction because the matter was "within the exclusive powers of the National Labor Relations Board." *Id.*, at 546–547. The Court's opinion in *Curry* refers to state-court "jurisdiction," but as Justice Frankfurter explained, "the term 'jurisdiction' . . . is a verbal coat of . . . many colors." *United States* v. *Tucker Truck Lines, Inc.*, 344 U. S. 33, 39 (1952) (dissenting opinion). The Court's opinion today implicitly suggests that the word "jurisdiction" is to lawyers what a term like *Bombycilla cedrorum* (cedar waxwing) is to ornithologists: a description of one and only one particular species recognized throughout the world. We all know that the term "jurisdiction" does not partake of that specialized a meaning.

Nothing in *Curry*, and certainly nothing in *Kalb*, foreordains the result in this case. State-court judges and trial courts of general jurisdiction in Alabama and in the other 49 States are experts primarily in state law, not federal law. Indeed, with the advancing march of federal legislation in areas heretofore left to state law, it would be an impossible task for any judge—federal or state—to keep abreast of the various areas in which there might be federal pre-emption. Here Alabama, by application of a neutral statute with a precise counterpart in the Federal Rules of Civil Procedure, has said that a defendant who wishes to claim federal pre-emption as a defense to state-court exercise of jurisdiction may not wait to raise that claim until after the case has gone to verdict. The Court, saying otherwise, allows a sophisticated defendant as in the present case to gamble on obtaining

a favorable verdict and raise a pre-emption defense only if it loses on the merits. To me this result defies common sense; if Congress had ordained it, I would reach it albeit with reluctance. But it is this Court, not Congress, that has ordained the result. I believe the Court is mistaken in doing so, and I therefore cannot join Part II of its opinion.

Having concluded that National Labor Relations Act pre-emption is "jurisdictional," and hence may be raised at any time, the Court goes on to decide that the Union has not carried its burden of showing that the conduct at issue here was "arguably" protected or prohibited by the Act. With this I agree. Accordingly, I join Parts I and III of the Court's opinion and concur in the judgment.

JUSTICE BLACKMUN, concurring in part and dissenting in part.

The Court today reaffirms that a pre-empted cause of action, as defined in *San Diego Building Trades Council* v. *Garmon*, 359 U. S. 236 (1959), is a claim that a state court is without power to adjudicate. *Ante*, at 393. I fully agree, and therefore join Parts I and II of the Court's opinion. But I believe that the standard enunciated in Part III to determine the pre-emption *vel non* of a particular cause of action is erroneous, as well as at odds with the principles and policies of *Garmon*. I therefore dissent from Part III of the Court's opinion and from its judgment.

In *Garmon*, this Court held that when an activity is protected or prohibited by the Act, or arguably protected or prohibited, courts must defer to the exclusive competence of the National Labor Relations Board. *Id.*, at 245. In the absence of the Board's clear determination that an activity is neither protected nor prohibited, nor arguably so, courts must stay their hand. "[W]hether federal law *does* apply is to be decided" by the Board. *Taggart* v. *Weinacker's, Inc.*, 397 U. S. 223, 229 (1970) (separate memorandum of Harlan, J.) (emphasis added). The Court today purports to follow *Garmon*, but nonetheless requires that the party "claiming

pre-emption must carry the burden of showing at least an arguable case before the jurisdiction of a state court will be ousted," *ante*, at 396, and proceeds to require here that the Union make a showing "sufficient to permit the Board to find that Davis was an employee, not a supervisor." *Ante*, at 395. In transforming the notion that some activities are *arguably* protected or prohibited into a requirement that a party claiming pre-emption make out an "arguable case," *ante*, at 396, it seems to me that the Court misses the point of its decision in *Garmon*. As a result of the decision today, a court, under the guise of weighing the sufficiency of the evidence, will be making precisely the determination that *Garmon* makes clear is for the Board, and only the Board, to make.

To understand how far the Court strays from the practical and congressionally mandated standard articulated in *Garmon*, it is sufficient to look to the basis of the broad pre-emption doctrine. Under the Act, some activities are protected and some are prohibited; other activities are subject to state regulation, while still others, not at issue in this case, are to be left unregulated by both federal and state authorities. Thus, the determination of whether an activity falls within the sphere of protected or prohibited is the crucial question under federal law, and one which this Court recognized is not always an easy determination to make. *Garmon*, 359 U. S., at 244. Accordingly, Congress deprived state courts of jurisdiction over actually or arguably protected or prohibited conduct and "confide[d] primary interpretation and application of its rules to a specific and specially constituted tribunal," thereby ensuring that the federal scheme would be administered uniformly with the wisdom and insight resulting from specialized expertise and experience. *Garner* v. *Teamsters*, 346 U. S. 485, 490 (1953), quoted in *Garmon*, 359 U. S., at 242.[1] Permitting courts to

---

[1] Justice Harlan, whose concurrence in *Garmon* indicated his initial hesitancy to accept its categorical treatment of particular claims, came to embrace its approach, recognizing that any other would require this Court, as

determine whether activity is protected or prohibited could result in a court's finding unlawful an activity that the Board might embrace as lawful.

In an attempt to garner support for its holding, the Court relies on *Marine Engineers* v. *Interlake S.S. Co.*, 370 U. S. 173, 184 (1962). Such reliance is misplaced. Indeed, in *Interlake* the Court reaffirmed *Garmon*, recognizing that the definition of "labor organization," like the definition of "supervisor," is "of a kind most wisely entrusted initially to the agency charged with the day-to-day administration of the Act as a whole." 370 U. S., at 180. In *Interlake*, this Court held that only the Board could determine whether the union met the statutory definition of a "labor organization."

The Court in *Interlake*, in dicta, then reviewed the evidence that was presented. Such evidence was certainly not intended to be held up as the benchmark of the showing required successfully to claim that an activity is *arguably* protected; the Court made clear that that evidence was sufficient to show that the conduct was *actually* protected:

> "This was a case, therefore, where a state court was shown not simply the arguable possibility of Labor Board jurisdiction over the controversy before it, but that *the Board had actually determined* the underlying issue upon which its jurisdiction depended" (emphasis added). *Id.*, at 184.[2]

---

the final court of review, to monitor every case in which a pre-emption claim is raised:

"Nor can we proceed on a case-by-case basis to determine whether each particular final judicial pronouncement does, or might reasonably be thought to, conflict in some relevant manner with federal labor policy. This Court is ill-equipped to play such a role and the federal system dictates that this problem be solved with a rule capable of relatively easy application, so that lower courts may largely police themselves in this regard." *Motor Coach Employees* v. *Lockridge*, 403 U. S. 274, 289–290 (1971).

[2] Similarly, the fact that the Board had asserted jurisdiction over the unions in *Interlake*, at the time the state-court case was pending, is not an indication of the standard of "arguably," because that evidence "was *more*

Thus, in *Interlake*, the Court was presented with actual determinations by the Board; under *Garmon* that is the only kind of showing sufficient to take the pre-emption decision out of the hands of the Board.

The present case underscores the signal merit of *Garmon*.[3] Davis was fired for union activities. According to Davis, he was assured by the Union that, if fired, he could obtain reinstatement. Davis' ability to obtain reinstatement turns on whether Davis is a supervisor. If Davis is a supervisor, the Act would not protect him against retaliatory actions by his

---

*than sufficient* to create an arguable case" (emphasis supplied), 370 U. S., at 182, n. 16, even though the unions had consistently advanced the position before the Board that they were not organizations within the meaning of the Act.

[3] To be sure, the *Garmon* universe is not without imperfection. JUSTICE WHITE has long sought to eliminate the "arguably protected" coverage of *Garmon* pre-emption. See, *e. g.*, *Lockridge*, 403 U. S., at 325–332 (WHITE, J., dissenting); *Longshoremen* v. *Ariadne Shipping Co.*, 397 U. S. 195, 201 (1970) (WHITE, J., concurring). In *Sears, Roebuck & Co.* v. *Carpenters*, 436 U. S. 180 (1978), the Court addressed what I believe was at the heart of JUSTICE WHITE's opposition to "arguably protected." There the Court acknowledged an exception to *Garmon* pre-emption for conduct that is arguably protected where the injured party has no means of bringing the dispute before the Board. The opinion today speaks of a broader opposition to "arguably protected," as its effect in this case is to expand the *Sears* exception to encompass a case where the injured party, here Davis, does have the means of bringing the dispute before the Board. Apparently seeking to eliminate "arguably protected," but unable to do so directly, JUSTICE WHITE establishes a standard that is nearly as effective. Justice Harlan, speaking for the Court in *Lockridge* and responding to those who sought to weaken *Garmon*, provides the answer to JUSTICE WHITE today:

"[A]lthough largely of judicial making, the labor relations pre-emption doctrine finds its basic justification in the presumed intent of Congress. While we do not assert that the *Garmon* doctrine is without imperfection, we do think that it is founded on reasoned principle and that until it is altered by congressional action or by judicial insights that are born of further experience with it, a heavy burden rests upon those who would, at this late date, ask this Court to abandon *Garmon* and set out again in quest of a system more nearly perfect." 403 U. S., at 302.

employer based on his union activities and Davis' suit would be cognizable in state court for the Union's alleged intentional misrepresentation. However, if Davis is not a supervisor, the employer would have committed an unfair labor practice in firing him, and Davis would be entitled to redress by the Board. Thus, the issue here falls within the rubric of "arguably"—the conduct at issue is arguably protected because Davis may be a statutory employee, not a supervisor.[4]

The crucial question then was whether Davis was a supervisor. The task of identifying supervisors is an "aging but nevertheless persistently vexing problem." *NLRB* v. *Security Guard Service, Inc.*, 384 F. 2d 143, 145 (CA5 1967). Supervisory status is an inherently fact-specific determination that turns on an individual's duties, not job title or classification. See, *e. g.*, *Winco Petroleum Co.*, 241 N. L. R. B. 1118 (1979) (giving an employee the title "supervisor" or even theoretical power to perform some supervisory functions does not convert a rank-and-file employee into a statutory supervisor); *Pattern Makers Assn.*, 199 N. L. R. B. 96 (1972) (shop foreman with supervisory authority who worked with tools 40% of his time was supervisor despite contract which defined supervisory employees as persons who did not work with tools of trade). It is precisely because of the difficulty in assessing the statutory supervisory status of an individual, and the need for uniformity in the interpretation of the federal labor laws, that this Court, in *Hanna Mining Co.* v. *Ma-*

---

[4] In the ordinary case, since a determination of pre-emption poses a jurisdictional bar to a court's adjudication of the merits of a suit, a defendant claiming pre-emption will do so at the threshold, usually in a motion to dismiss. Thus, courts will be called upon to determine pre-emption before facts have been developed or discovery has occurred. This poses a difficult burden for a defendant required, under today's decision, to present a factual showing. If a fair reading of the complaint leads to a possibility that the activity complained of may be protected or prohibited, then the case falls squarely within the reach of "arguably protected," and the state court lacks jurisdiction over the dispute. See *Construction Laborers* v. *Curry*, 371 U. S. 542, 546 (1963).

*rine Engineers*, 382 U. S. 181 (1965), held that state law can be applied only if the supervisory status of the individuals in question "has been settled with unclouded legal significance."[5]  *Id.*, at 190.  The supervisory status of Davis has never been settled by the Board.

Thus, in asserting that Davis was arguably a supervisor, the Union "advance[d] an interpretation of the Act that is not plainly contrary to its language and that has not been 'authoritatively rejected' by the courts or the Board."  *Ante*, at 395, quoting *Interlake*, 370 U. S., at 184.  That is the only kind of showing that is properly required under *Garmon*.[6]

I therefore dissent from Part III of the Court's opinion and from its judgment.

---

[5] There is indeed a cloud over Davis' status.  As a "ship superintendent," Davis performs the same functions as workers called "walking foremen" in Houston, Tex.  We are advised that the Houston walking foremen formed a union and are covered by a collective-bargaining agreement. See Juris. Statement 4, n. 3.

[6] In establishing the new standard, JUSTICE WHITE is joined by the four Justices who dissent from the Court's holding that pre-emption goes to subject-matter jurisdiction.  These four would hold that pre-emption is merely a defense.  Because, under Alabama law, a defense that is not raised during trial is deemed waived, see *ante*, at 386, n. 7, the view of these four Justices means that the decision of the Alabama Supreme Court rested on an independent and adequate state ground, see *ante*, at 388–389, ineluctably leading to the conclusion that this Court is without jurisdiction over this case.  Rather than stating that they would dismiss for want of jurisdiction, however, those Members of the Court reach out to join Part III of JUSTICE WHITE's opinion.