WILBURN YOUNG *et al.*, Indiv. and on Behalf of a Class of All Others Similarly Situated, Plaintiffs-Appellants, v. CATERPILLAR, INC., Defendant-Appellee.

Third District    No. 3—93—0306

Opinion filed February 18, 1994.

Katz, Friedman, Schur & Eagle, of Chicago (Stanley Eisenstein, of counsel), and Nicoara & Steagall, of Peoria (Richard L. Steagall, of counsel), for appellants.

C.R. Gangemi, Jr., of Winston & Strawn, of Chicago (Gerald C. Peterson, of counsel), and Theodore R. Johnson, of Caterpillar, Inc., of Peoria, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

The plaintiffs-appellants, Wilburn Young, Morris Delbridge and Sankey Stanton (hereinafter the plaintiffs), filed a complaint in the circuit court of Tazewell County asserting a class action against the defendant-appellee, Caterpillar, Inc. The complaint alleged the defendant breached individual contracts of the employment with the plaintiffs and all others members of the class they represented. The circuit court dismissed the action on the defendant's motion for judgment on the pleadings/summary judgment, treating the motion as a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)). We affirm, finding the plaintiffs' State-law causes of action are preempted by the National Labor Relations Act (the Act or NLRA) (29 U.S.C. § 151 *et seq.* (1988)).

Under section 2—619(a)(1), a cause of action can be dismissed when the court finds it lacks subject matter jurisdiction. (735 ILCS 5/2—619(a)(1) (West 1992).) In assessing a section 2—619 motion to dismiss, the circuit court must take all facts properly pleaded as true, including facts within an affidavit if those facts are not contradicted by counteraffidavit. (*Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 485 N.E.2d 372; *Denton Enterprises, Inc. v. Illinois State Toll Highway Authority* (1979), 77 Ill. App. 3d 495, 396 N.E.2d 34.) If the grounds for dismissal do not appear on the face of the pleading attacked, the motion to dismiss is to be supported by affidavit. (735 ILCS 5/2—619(a) (West 1992).) On review, this court is concerned only with questions of law presented by the pleadings. *People ex rel. Hartigan v. Knecht Services, Inc.* (1991), 216 Ill. App. 3d 843, 575 N.E.2d 1378.

In the instant case, the parties (and in particular the plaintiffs) have attempted to present and discuss only those facts which support their contentions. However, from the pleadings and affidavits the basic facts emerge.

The record shows the plaintiffs are members of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the Union). The Union is the exclusive collective bargaining representative of the plaintiffs. At relevant times prior to April 15, 1992, the plaintiffs were employees of the defen-

dant. The defendant is an employer in industry affecting interstate commerce within the meaning of the National Labor Relations Act.

During the late summer of 1991, the Union and the defendant entered into collective bargaining over the terms of a new "Labor Contract." The prior collective bargaining agreement was set to expire on September 30, 1991. Following an agreed extension, a dispute arose between the parties. On November 4, 1991, the Union began a strike at the defendant's facilities in Decatur and East Peoria. Though the talks continued into February 1992, the strike spread to other Caterpillar plants during the winter.

On March 5, 1992, Wayne Zimmerman, defendant's vice- president for human resources, notified the Union in writing that because the Union had rejected the defendant's third proposal to settle the dispute, the defendant now considered the talks at an impasse. On March 31, 1992, the defendant notified the Union that in light of the ongoing impasse, the defendant had decided to unilaterally implement "modified terms and conditions of employment" in line with the defendant's last contract offer. The defendant also informed the Union that it was sending letters to all employees inviting their "continued or return to work." The defendant stated that it continued to recognize the Union as the collective bargaining representative and remained willing to meet with the Union at any time.

Thereafter, a letter dated March 31, 1992, was sent to each employee. Citing the Union's rejection of the defendant's final contract offer, the defendant stated it was "inviting all hourly employees to return to work beginning on Monday, April 6, 1992." The letter told the employees that if they did not return to work on the 6th, the defendant would begin filling open positions by recalling laid-off employees and by hiring permanent replacements. The letter further informed the employees that the defendant now found it required "considerably fewer employees" than prior to the strike.

On April 1, 1992, and again on April 2, 1992, the Union filed unfair labor practices claims against the defendant with the National Labor Relations Board (the Board). The Union contended the defendant's action interfered with the employees' rights under section 7 of the Act (29 U.S.C. § 157 (1988)) in violation of section 8 of the Act (29 U.S.C. § 158 (1988)).

According to the affidavit of Jerry Brust, the director of corporate labor relations for Caterpillar, the Union instructed its employees not to return to work. The plaintiffs in this case did not return to work on the 6th, although approximately 1,000 other employees did. On April 14, 1992, the Union made an unconditional offer to return to work. The defendant accepted the offer. The only apparent factual

disagreement between the parties concerns the reinstatement process of returning strikers. The defendant contends it told the Union and its members they could not all return at the same time, but they would be reinstated over a period of time. The plaintiffs deny the defendant said anything about a delay in reinstatement.

The record contains a letter from the defendant, dated April 14, 1992, informing employees who were on strike that they should return to work only after receiving notice from their "facility management." The Union issued a letter the same day telling all members to return to work on April 15, 1992. The letter further told members that they should report to their committeeman if they were denied the opportunity to return to work. On April 16, 1992, the defendant issued a notice stating that it would begin recalling striking employees on April 20, 1992. The letter stated that employees should report to work only as notified. According to Brust's affidavit, virtually all employees were back to work by May 26, 1992.

On June 30, 1992, the regional director of the National Labor Relations Board notified the Union that there was insufficient evidence to issue a complaint on the Union's unfair labor practices claims. Subsequently, the Union withdrew the charges.

Prior to the regional director's decision, the plaintiffs filed the instant complaint. The defendant filed an answer and affirmative defenses. Thereafter, the defendant filed its motion for judgment on the pleadings or, in the alternative, summary judgment. On September 9, 1992, the circuit court entered an order which, *inter alia*, stated that the defendant's motion would be treated as a section 2—619 motion to dismiss. The plaintiffs were allowed 30 days to file a response to the motion. On March 24, 1993, the court granted the defendant's motion and dismissed the plaintiffs' complaint with prejudice.

On appeal, the plaintiffs contend this case involves the breach of individual contracts of employment governed by State law. The defendant, on the other hand, maintains the plaintiffs' case actually concerns their reinstatement rights, matters which are initially within the exclusive purview of the Board. Thus, in order to determine whether the circuit court properly found the claims preempted, we must (without reaching the merits of any substantive claim) determine the actual character of the plaintiffs' claims. When addressing the issue of preemption, the focus of concern is on the conduct which is being regulated, not the formal description of governing legal standards asserted by one party or another. (*Amalgamated Association of Street, Electric Ry. & Motor Coach Employees of America v. Lockridge* (1971), 403 U.S. 274, 29 L. Ed. 2d 473, 91 S. Ct. 1909.) Federal preemption cannot be avoided by labeling

Federal claims as State-law contract and tort claims. *Missouri Portland Cement Co. v. United Cement, Lime, Gypsum & Allied Workers International Union* (1987), 153 Ill. App. 3d 1046, 506 N.E.2d 620.

In the instant case, the plaintiffs focus on the March 31, 1992, letter from the defendant to all striking employees. The plaintiffs contend this letter constituted individual offers of employment to each striking employee, which the plaintiffs accepted when they showed up at the plant gate on April 15, 1992. When the defendant did not immediately take them back, but delayed their reinstatement, the plaintiffs maintain the defendant breached the alleged contracts.

The defendant in turn asserts the case must be assessed in light of additional surrounding circumstances. The Union and the defendant had been negotiating over a new contract for over six months. A strike had been going on since November 4, 1991. In late February, 1992, the parties had reached an impasse. On March 31, 1992, the defendant asked the strikers to return to work on April 6, 1992, and work under the terms of the defendant's final contract offer. The defendant threatened to hire permanent replacements to fill the positions not filled by returning strikers. The Union filed unfair labor practices claims against the defendant because of its action on March 31. The Union also told the striking employees not to return to work. The plaintiffs in this case did not report to work on April 6, 1992.

On April 14, 1992, the Union announced it was unconditionally ending its strike action against the defendant. According to the defendant, the Union told its members to report to work the next day, despite the defendant's instructions that they were to report only as recalled. The defendant began taking back strikers on April 20, 1992, and nearly all were back at work by the end of May.

Taking the facts contained in the pleadings and affidavits as true, those facts show the plaintiffs' claims actually concern the defendant's conduct in failing to immediately reinstate them after the Union ended the strike. In their complaint, the plaintiffs sought lost wages and benefits from April 15, 1992, through the date of their reinstatement. They did not seek lost wages and benefits from April 6, 1992, through April 14, 1992. The record shows that on April 14, 1992, the Union had announced it was calling off the strike and instructed members to report to work the next day. Thereafter, the problem with recalling all employees at one time developed. The plaintiffs fail to explain why they did not report to work on April 6, 1992. The plaintiffs did not report to work until after they were instructed to do so at the conclusion of the strike. In sum, we find the plaintiffs'

attempt to utilize the March 31, 1992, letter to dress their reinstatement claims in the guise of State-law contract claims unavailing.

It is clearly within Congress' powers to establish an exclusive Federal forum to adjudicate issues of Federal law in a particular area that Congress has the authority to regulate under the Constitution. (*International Longshoremen's Association v. Davis* (1986), 476 U.S. 380, 90 L. Ed. 2d 389, 106 S. Ct. 1904.) Preemption, the practical manifestation of the supremacy clause, is always a Federal question. (*International Longshoremen's Association v. Davis* (1986), 476 U.S. 380, 90 L. Ed. 2d 389, 106 S. Ct. 1904.) The constitutional principles of preemption are designed with a common end in view: to avoid conflicting regulation of conduct by various bodies which might have some authority over the subject matter. *Amalgamated Association of Street, Electric Ry. & Motor Coach Employees of America v. Lockridge* (1971), 403 U.S. 274, 29 L. Ed. 2d 473, 91 S. Ct. 1909.

In *San Diego Building Trades Council, Millmen's Union, Local 2020, Building Material & Dump Drivers, Local 36 v. Garmon* (1959), 359 U.S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773, the United States Supreme Court set forth the applicable preemption test: "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." (*Garmon*, 359 U.S. at 244, 3 L. Ed. 2d at 782, 79 S. Ct. at 779.) State causes of action may, however, be sustained if the behavior is of only peripheral concern to the Federal law or touches interests deeply rooted in local feeling and responsibility. (*Belknap, Inc. v. Hale* (1983), 463 U.S. 491, 77 L. Ed. 2d 798, 103 S. Ct. 3172.) In some circumstances the failure to reinstate striking employees may constitute an unfair labor practice, and whether or not an unfair labor practice has occurred in such circumstances falls within the exclusive jurisdiction of the Board. See, *e.g.*, *National Labor Relations Board v. Erie Resistor Corp.* (1963), 373 U.S. 221, 10 L. Ed. 2d 308, 83 S. Ct. 1139; *National Labor Relations Board v. Fleetwood Trailer Co.* (1967), 389 U.S. 375, 19 L. Ed. 2d 614, 88 S. Ct. 543.

In the instant case, the conduct complained of by the plaintiffs involves the manner in which they were reinstated following the conclusion of their strike. They seek lost wage and benefits arising from the delay. These claims are in essence unfair labor practices claims under section 8 of the Act. These claims are within the exclusive jurisdiction of the Board and therefore State-court jurisdiction is preempted. The conduct complained of is not of peripheral concern to Federal labor law, nor is it uniquely rooted in local feelings

and responsibility. Despite attempts to dress the claims as breach of contract, the actual issues presented to the State court would be identical to those presented to the Board in an unfair labor practices claim, namely, whether the delay in reinstating the plaintiffs was based on "legitimate and substantial business justifications."

Even assuming the plaintiffs could make a State-law breach of contract claim arising out of the defendant's failure to immediately reinstate them at the conclusion of the strike, we find such a claim preempted. The plaintiffs' principal reliance on *Belknap, Inc. v. Hale* (1983), 463 U.S. 491, 77 L. Ed. 2d 798, 103 S. Ct. 3172, is misplaced. *Belknap* is readily distinguishable from the instant case.

The employer in *Belknap* had hired replacements during the course of a strike and promised those replacements that their positions were permanent. Under the terms of the subsequent strike settlement, the employer was required to reinstate the strikers. The employer therefore fired the permanent replacements to accommodate returning strikers. The permanent replacements brought State-law breach of contract and misrepresentation claims in State court. The United States Supreme Court held that such claims brought by permanent replacement employees were not preempted by the NLRA. The key factor in *Belknap* was that the causes of action were brought by third parties to the labor dispute, *i.e.*, the permanent replacements.

We note the Supreme Court, in discussing the replacements' misrepresentation claims, stated that strikers could not "secure reinstatement, or indeed any relief, by suing for misrepresentation in state court. The state courts in no way offer them an alternative forum for obtaining relief that the Board can provide." (*Belknap*, 463 U.S. at 510, 77 L. Ed. 2d at 814, 103 S. Ct. at 3183.) Thus, the plaintiffs' avenue of relief in this case was through the Board. Federal labor law preempted the plaintiffs' State-law claims. The circuit court therefore correctly dismissed the plaintiffs' action for lack of subject matter jurisdiction.

Additionally, we find no merit to the plaintiffs' intimations that finding their breach of contract claims preempted violates their right to equal protection of the law. (See U.S. Const., amend. XIV.) Initially, we note the plaintiffs cite no authority in support of this proposition. (See 145 Ill. 2d R. 341(e)(7).) Mere contentions without providing citations to authority do not merit consideration on appeal. *Faulkner-King v. Department of Human Rights* (1992), 225 Ill. App. 3d 784, 587 N.E.2d 599.

For the foregoing reasons, we affirm the judgment of the circuit court of Tazewell County.

Affirmed.

SLATER, P.J., and LYTTON, J., concur.