[No. A042769. First Dist., Div. Two. May 31, 1990.]

MACHINISTS AUTOMOTIVE TRADES DISTRICT LODGE NO. 190 et al., Plaintiffs and Appellants, v. PETERBILT MOTORS COMPANY et al., Defendants and Respondents.

**COUNSEL**

Boltuch & Siegel, Jonathan H. Siegel, Jody I. LeWitter and Pamela Allen, for Plaintiffs and Appellants.

Littler, Mendelson, Fastiff & Tichy and Henry D. Lederman for Defendants and Appellants.

## OPINION

**PETERSON, J.**—In this case, appellant unions asserted state law tort claims arising from defendants' closure of a factory, following alleged misrepresentations about the possibility that the factory might be kept open. Respondents removed the action to federal court, where it was subsequently remanded to the Alameda County Superior Court, the federal court finding no cause of action which would render the case removable. (*Mach. Auto. Trades Lodge 190* v. *Peterbilt Motors* (N.D.Cal. 1987) 666 F.Supp. 1352.) The unions contend the lower court then erred in dismissing the claims on preemption grounds because of the exclusive jurisdiction of the National Labor Relations Board (NLRB). This case raises issues concerning federal labor law preemption of state law causes of action in a collective bargaining context, analogous to similar preemption questions which have recently been addressed by this court (Div. Two). (See *Rodriguez* v. *Yellow Cab Cooperative, Inc.* (1988) 206 Cal.App.3d 668 [253 Cal.Rptr. 779] [wrongful discharge suit brought by union organizer preempted by federal National Labor Relations Act].)

We conclude the trial court correctly dismissed the action since it was within the exclusive jurisdiction of the NLRB, and we, therefore, affirm.

## I. FACTS AND PROCEDURAL HISTORY

On this appeal from a judgment of dismissal following the sustaining of a demurrer, we assume the truth of the facts stated in appellants' complaint.

Appellants are four labor unions whose members worked at the Peterbilt Motors Company truck assembly plant in Newark, California until the plant was closed in 1986. Appellant unions were parties to a collective bargaining agreement covering their almost 1,000 members at the plant.

In May and June of 1986, respondents told appellant unions that the Newark plant was being considered for closure together with two other plants, located in Nashville, Tennessee and Denton, Texas. Appellants were informed that no final decision had been made as to which one of the three plants would be closed, and appellants were invited to propose modifications to the terms and conditions of employment at Newark which might reduce labor costs and allow the Newark plant to remain open.

Appellants allege a decision in fact had already been made to close the Newark plant; and this decision was concealed from appellants so that respondents could use the prospect of a plant closure to extract concessions

from the unions at the other two plants. Appellants allege they were damaged by this scheme because their members continued to work at the Newark plant, rather than seeking other employment or engaging in collective activity aimed at preventing the closure.

Appellants filed this action in Alameda Superior Court in October 1986, alleging that the Newark plant was being closed pursuant to the decision made in the spring of 1986; and claiming "Intentional Misrepresentation, Negligent Misrepresentation, Breach of Fiduciary Duty, Intentional and Negligent Infliction of Emotional Distress, Negligence, Bad Faith Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, Wrongful Termination in Violation of Public Policy, [and] Constructive Trust."

Respondents removed the action to federal court, alleging it was preempted by the National Labor Relations Act (NLRA). That court granted appellants' motion to remand the action to state court because it did not allege a claim within the original jurisdiction of the federal court and, therefore, was not removable. Respondents then demurred on the grounds the action was barred by federal law, and the demurrer was sustained with leave to amend. Appellants amended their action to add a claim for "Promissory Estoppel," and respondents renewed their demurrer on the same federal preemption grounds. The superior court sustained the demurrer without leave to amend, because "the area is pre-empted [by federal law]." Appellants timely appealed from the ensuing judgment of dismissal.

II. DISCUSSION

We affirm the judgment because the action was preempted by the NLRA. (29 U.S.C. § 151 et seq.)

As we have previously observed, where the activity which is the subject of suit is either arguably prohibited or arguably protected by the NLRA, state court jurisdiction must yield to the exclusive jurisdiction of the NLRB. (*Rodriguez* v. *Yellow Cab Cooperative, Inc., supra,* 206 Cal.App.3d at p. 674.) "In *San Diego Unions* v. *Garmon* (1959) 359 U.S. 236, 245 [3 L.Ed.2d 775, 783, 79 S.Ct. 773], the Supreme Court enunciated what has come to be known as the *Garmon* rule of preemption, which protects the exclusive jurisdiction of the NLRB over unfair labor practices: 'When an activity is arguably subject to [section] 7 or [section] 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the [NLRB].' " (*Ibid.,* brackets in original, fn. omitted.)

Respondents bore the burden of demonstrating in the trial court that this action was preempted by federal law. However, the burden is not onerous,

since it only requires that respondents show the claims in issue were "arguably" subject to exclusive NLRB jurisdiction. (*Longshoremen* v. *Davis* (1986) 476 U.S. 380, 398 [90 L.Ed.2d 389, 405-406, 106 S.Ct. 1904] (*Davis*).) "[A] party asserting pre-emption must put forth enough evidence to enable a court to conclude that the activity is *arguably subject* to the Act." (*Ibid.*, italics added.) There the Supreme Court rejected the claim of preemption, because "we find nothing in the record to make out even a *colorable case* for holding [the action was preempted]." (*Id.*, fn. 14, italics added.)

Thus, in order to establish their preemption argument as an initial matter, respondents obviously did not need to show appellants would be likely to *prevail* before the NLRB; only that the claims in issue here—under the pleaded facts assumed to be true for purpose of demurrer—were "arguably subject" to NLRB jurisdiction. It is up to the NLRB to then determine whether its jurisdiction has been properly invoked in an "arguabl[e]" case, as the Supreme Court explained in *Davis, supra,* in the course of reaffirming its analysis in *Garmon:* "The [*Garmon*] Court acknowledged that '[a]t times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 [of the NLRA] or was, perhaps, outside both these sections.' [Citations.] *Even in such ambiguous situations, however,* the Court concluded that 'courts are not primary tribunals to adjudicate such issues. *It is essential to the administration of the Act that these determinations be left in the first instance to the [NLRB].*' " (*Longshoremen* v. *Davis, supra*, 476 U.S. at pp. 389-390 [90 L.Ed.2d at pp. 399-400], italics added, quoting *San Diego Unions* v. *Garmon* (1959) 359 U.S. 236, 244-245 [3 L.Ed.2d 775, 782-783, 79 S.Ct. 773].)

■ In this case, appellants are clearly parties to a collective bargaining relationship; and their claims allege what is in essence a failure to bargain in good faith regarding the impending closure of the Newark plant. A recent trilogy of cases from federal circuit courts concluded such claims (concerning concessions sought, induced, or offered in order to avoid a plant closure) are barred by the NLRB's exclusive jurisdiction. "The displaced . . . employees raise claims that are in substance allegations that the Company breached its duty to bargain in good faith in negotiating the concessions and in failing to reveal the likelihood of a plant closure despite the concessions. These are the types of claims to which the *Garmon* preemption doctrine was intended to apply." (*Parker* v. *Connors Steel Co.* (11th Cir. 1988) 855 F.2d 1510, 1516-1517, rehg. den. (1988) 864 F.2d 795, cert. den. (1989) 490 U.S. 1066 [104 L.Ed.2d 631, 109 S.Ct. 2066]; accord *Kolentus* v. *Avco Corp.* (7th Cir. 1986) 798 F.2d 949, 961, cert. den. (1987) 479 U.S. 1032 [93 L.Ed.2d 832, 107 S.Ct. 878] ["The plaintiffs' common law fraud claim [regarding

failure to provide accurate information about an impending plant closure] is indistinguishable from an unfair labor practice claim that could have been pursued before the NLRB."]; *Serrano* v. *Jones & Laughlin Steel Co.* (6th Cir. 1986) 790 F.2d 1279, 1286, motion to allow cert. den. (1988) 488 U.S. 988 [102 L.Ed.2d 577, 109 S.Ct. 549], reconsideration den. (1989) 488 U.S. 1000 [102 L.Ed.2d 768, 109 S.Ct. 775] ["No matter how it is stated, the gravamen of the three fraud charges is that J & L did not bargain in good faith in obtaining concessions [to avoid a plant closure]."].) As such, the claims in issue here are preempted by the NLRA.

For purposes of our preemption analysis, we need not actually endorse the holdings in the foregoing three cases (although we are not cited to contrary authority). For our purposes, it is sufficient that these cases indicate the claims appellants assert are at the very least arguably, or colorably, preempted. (*Longshoremen* v. *Davis, supra,* 476 U.S. at p. 398 [90 L.Ed.2d at p. 405].)

Appellants present an interesting argument, however, to avoid preemption. Relying upon a reinterpretation of *First National Maintenance Corp.* v. *NLRB* (1981) 452 U.S. 666 [69 L.Ed.2d 318, 101 S.Ct. 2573], they argue the NLRB would have no jurisdiction over their claims. It is true that the Supreme Court in *First National Maintenance* refused to give the NLRB the power to interfere with an employer's right to close its plant for purely economic reasons. However, recognition of the employer's right to close its business goes hand in hand with recognition of the union's right, *enforceable by the NLRB,* to timely notice of closing for the purpose of demanding bargaining over the *effects* of that closing on employees. (*Id.* at p. 677, fn. 15 [69 L.Ed.2d at p. 330].)

"There is no doubt that [the employer] was under a duty to bargain about the *results or effects* of its decision to stop the work . . . ." (452 U.S. at p. 677, fn. 15 [69 L.Ed.2d at p. 330], italics added.) "There is no dispute that the union must be given a significant opportunity to bargain about these matters of job security as part of the 'effects' bargaining mandated by § 8(a)(5). [Citations.] And, under § 8(a)(5), bargaining over the effects of a decision must be conducted in a meaningful manner and at a meaningful time, and *the Board* may impose sanctions to insure its adequacy." (*Id.* at pp. 681-682 [69 L.Ed.2d at pp. 332-333], italics added.)

Thus, an employer which decides to exercise its right to close a plant for economic reasons still must give timely and accurate notice to the affected unions; and must bargain in good faith over such effects on employees as severance pay, transfer rights, and so on. A breach of that duty is subject to

the jurisdiction of the NLRB for the purpose of fashioning a remedy under section 8(a)(5) of the NLRA. Here, moreover, we need not for our preemption purposes conclude that appellants would likely prevail on such a claim by invoking NLRB remedies, only that it is arguable the NLRB has jurisdiction. Appellants' claim, that the NLRB would not be able to help them because subsequent effects bargaining in fact fulfilled the section 8(a)(5) duty, at most presents an arguable dispute as to the NLRB's ultimate view of the case; and where NLRB jurisdiction to fashion a remedy is even arguable, we must defer to the NLRB.

■  Appellants also argue their claims might escape under one of the various exceptions to the preemption doctrine, but none of them apply here to save this action. First, appellants argue their action escapes preemption as one of merely "peripheral concern" to the NLRA, or as an action "deeply rooted in local feeling and responsibility." (*San Diego Unions* v. *Garmon, supra*, 359 U.S. at pp. 243, 244 [3 L.Ed.2d at p. 782].) Of course, California does have an interest in providing remedies for fraudulent conduct, and in regulating actions which have the effect of throwing Californians out of work. However, here as in *Rodriguez, supra*, the claims in issue are preempted because "we find a significant risk that the instant state court action might interfere in the regulation of conduct protected by the NLRA." (206 Cal.App.3d at p. 678.) Further, if appellants were to prevail, they "would prove respondent[s] committed what is arguably an unfair labor practice." (*Ibid.*) Whether respondents here violated their duty to provide timely notice of the impending plant closure so as to allow for bargaining over its effects, and whether their actual decision to close was motivated by cost constraints as is clearly allowed by federal law (see *First National Maintenance Corp.* v. *NLRB, supra*, 452 U.S. 666) are questions reserved in the first instance to the NLRB, not a state or federal court.

■  Next, appellants refer to recently passed federal legislation which mandates a certain period of notice for certain layoffs and plant closures, the Worker Adjustment and Retraining Notification Act (WARN). (29 U.S.C. § 2101 et seq.) However, WARN took effect only in February 1989, long after the 1986 plant closure in issue here; and WARN and its legislative history do not indicate appellants' state law claims would survive preemption under the NLRA. It is true that a state statute modelled on WARN, providing a minimum notice period as a state labor standard, could well survive preemption under the NLRA. (Cf. *Fort Halifax Packing Co.* v. *Coyne* (1987) 482 U.S. 1 [96 L.Ed.2d 1, 107 S.Ct. 2211] [Maine statute providing minimum severance pay standard not preempted by ERISA or the NLRA].) However, appellants here do not make claims about any state statute providing a minimum labor standard requiring no-

tice of plant closure; rather, they make claims about respondents' alleged bad faith, misrepresentations, and concealment of facts in urging them to propose modifications to the applicable collective bargaining agreement. Such claims clearly are within the exclusive jurisdiction of the NLRB.

■ Appellants also refer to the fact that respondents specifically disclaimed any intention of reopening bargaining on the applicable labor contract when they approached the unions to invite offers of concessions. However, the fact respondents so indicated does not mean any negotiations which did take place in order to avoid an allegedly impending plant closure would not be governed by the NLRA, since the parties clearly were referring to the terms and conditions of employment of the union members. (See *Serrano* v. *Jones & Laughlin Steel Co., supra,* 790 F.2d at pp. 1286-1287.) In any event, the NLRB had the exclusive jurisdiction to determine the facts and fashion any remedy. (*Ibid.*)

■ Finally, appellants suggest disingenuously for the first time in their reply brief that they are merely asserting a breach of contract claim, over which the federal and state courts have concurrent jurisdiction together with the NLRB. As a preliminary matter, we must note this position is diametrically opposed to the position appellants took in the remand proceedings before the federal court, in which they necessarily contended that court lacked jurisdiction which would allow removal. If the federal court could have exercised concurrent jurisdiction over such a breach of contract claim, the action could not have been remanded to state court. In *Mach. Auto. Trades Lodge 190* v. *Peterbilt Motors, supra,* Judge Peckham noted that under his limited exercise of federal removal jurisdiction he could not himself dismiss this case due to the NLRB's exclusive jurisdiction, and was required to remand to allow the state court to make that determination. (666 F.Supp. at p. 1356.)

However, the issue before us is not the propriety of the removal to federal court, but the propriety of the dismissal in state court. Appellants have not pleaded any contract action under section 301 of the Labor Management Relations Act. (29 U.S.C. § 185.) If appellants were bringing an action to compel arbitration of grievances arising under the collective bargaining agreement, the federal and state courts could well have concurrent jurisdiction with the NLRB; however, where, as here, appellants make no reference to such a breach of the collective bargaining agreement from refusal to arbitrate grievances arising from the effects of the plant closure, and instead complain of fraud and other misconduct in the process by which respondents informed them of the plant closure, the courts have held the action is within the *exclusive* jurisdiction of the NLRB. (*Serrano* v. *Jones & Laughlin*

*Steel Co., supra*, 790 F.2d at pp. 1286-1287; *Parker* v. *Connors Steel Co., supra*, 855 F.2d at pp. 1516-1517; *Kolentus* v. *Avco Corp., supra*, 798 F.2d at p. 961.) Even though appellants might attempt to recast this misconduct as a breach of contract, it remains within the NLRB's exclusive jurisdiction.

The facts alleged in the complaint, which we must assume as true, would support the conclusion that appellants have at the very least been rather shabbily treated, and, at worst, that their livelihoods were subject to manipulation by respondents as part of an effort to control wages at other plants. Our result, however, must be dictated by important principles of law, which we are bound to follow, transcending such considerations. A contrary ruling here would quickly put the shoe on the other foot, establishing authority for employers (as well as employees) to seek redress against unions in state courts for alleged violations of state law, thereby bypassing the NLRB because (as analogously contended here by appellant unions for employees) it arguably lacked the power to fashion a remedy the employer considered suitable.

Historically, the state courts were founts of law favorable to employers in their struggle with unions, and applied principles of contract and tort law in a manner which Congress judged was against the public interest of the nation as a whole. It was to avoid just such a result that the NLRB's exclusive jurisdiction was originally created, and has been defended by the preemption doctrine.

"Because appellant[s'] claim [concerns conduct which is arguably prohibited and] arguably protected by the NLRA . . . , exclusive jurisdiction over the conduct alleged in the complaint lies with the NLRB." (*Rodriguez* v. *Yellow Cab Cooperative, Inc., supra*, 206 Cal.App.3d at p. 681.)

III.  DISPOSITION

The judgment is affirmed.

Kline, P. J., and Smith, J., concurred.