Submitted on record and briefs March 10, 1999, reversed and remanded
February 23, 2000

# HOUSING AUTHORITY OF PORTLAND,
*Respondent,*

*v.*

# Ed ASANA,
*Appellant.*

## (97F903908; CA A100038)

1 P3d 1025

Edward Johnson, Hannah Callaghan, Michelle Ryan and Multnomah County Legal Aid Service filed the opening brief for appellant. On the reply brief was Edward Johnson.

Paul W. Jones filed the brief for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

Kistler, J., dissenting.

## EDMONDS, P. J.

Defendant appeals from a judgment requiring him to vacate an apartment leased to him by plaintiff. The leased premises are federally subsidized public housing subject to 42 USC § 1437d (1994). Because the eviction did not comply with the statute's requirements, we reverse.

On June 13, 1997, plaintiff issued to defendant a notice of eviction for failure to pay rent. On July 14, 1997, plaintiff filed a forcible entry and detainer action against defendant which was resolved on August 6, 1997, by a stipulated judgment. The judgment reinstated defendant's tenancy, established a schedule of payments that he was required to make in the future and required him, among other things, to work with family intervention specialists and to begin counseling to address drug abuse issues. The judgment provided that if defendant failed to comply with any of the judgment's terms, "plaintiff shall have immediate restitution of the premises on any noncompliance date."

On October 29, 1997, plaintiff filed an affidavit of noncompliance with the trial court. The affidavit averred that defendant had violated the terms of the stipulated judgment by failing to work with family intervention specialists and by failing to begin counseling. Defendant had made the rent payments required by the stipulated judgment. As a result of the affidavit, the deputy court administrator issued a notice of restitution requiring defendant to vacate his apartment within four days. Defendant moved to stay the execution of the eviction pending a hearing. He did not ask the court to set aside the stipulated judgment. At the hearing on the motion, defendant raised two arguments. He argued that he had in fact complied with the stipulated judgment's terms and that the proposed eviction was not lawful under federal law. Specifically, his counsel told the trial court:

> "This unconscionable agreement cannot trump all of Federal Subsidized Housing law. * * * *Mr. Asana is entitled to good cause*, he is entitled to 30 day[s'] notice, and he is entitled to 14 days to cure. He wasn't given any of these things and we also believe that there is a fair housing issue in that a lot of these provisions of the Stipulated Agreement have

been added to Mr. Asana's rent, or lease, in theory because of his disability." (Emphasis added.)

The trial court ruled that defendant had signed the stipulated judgment and that the judgment did not violate federal law. Also, the trial court found that defendant had failed to comply with the terms of the stipulated judgment after hearing evidence on those issues. Accordingly, it ordered defendant evicted.

■■■■ On We begin by analyzing defendant's argument that the automatic restitution provision of the judgment is in violation of federal regulations. 42 USC § 1437d(l)(4) (1994) provides:

"Each public housing agency shall utilize leases which—

"* * * * *

"(4) require that the public housing agency may not terminate the tenancy except for *serious or repeated violation* of the terms or conditions of the lease or *for other good cause*[.]" (Emphasis added.)

The mandatory nature of the language "shall utilize leases" reflects a congressional intent that leases in which a public housing agency is the landlord contain the enumerated clauses or be read as if the clauses had been inserted in the lease. *See, e.g., Noble v. Bethlehem Housing Authority*, 617 F Supp 248 (ED Pa 1985) (holding that federally mandated notice or grievance procedures must be followed even when the lease does not contain those provisions). Morever, the Department of Housing and Urban Development has promulgated regulations regarding 42 USC § 1437d that prohibit certain clauses in leases for public housing. 24 CFR § 966.6 (1997) provides, in relevant part:

"Lease clauses of the nature described below shall not be included in new leases between a [Public Housing Authority] and a tenant and shall be deleted from existing leases either by amendment thereof or execution of a new lease:

"(a) *Confession of judgment*. Prior consent by the tenant to any lawsuit the landlord may bring against him in

connection with the lease and to a judgment in favor of the landlord.

"* * * * *

"(d)  *Waiver of legal notice by tenant prior to actions for eviction or money judgments.* Agreements by the tenant that the landlord may institute suit without any notice to the tenant that the suit has been filed, thus preventing the tenant from defending against the lawsuit.

"(e)  *Waiver of legal proceedings.* Authorization to the landlord to evict the tenant or hold or sell the tenant's possessions whenever the landlord determines that a breach or default has occurred without notice to the tenant or any determination by a court of the rights and liabilities of the parties."

The legal effect of the August 1997 stipulated judgment was to create a new lease agreement between the parties that was subject to federal statutes and regulations by operation of law.[1] The judgment's "restitution" clause that permitted plaintiff to evict defendant without providing him with the opportunity to defend violates 24 CFR § 966.6 (1997). That rule provides that lease clauses that give the landlord a right to an automatic eviction are to be "deleted from existing leases" and "shall not be included in new leases." It necessarily follows that any order of eviction that depends on the legal efficacy of a prohibited clause also is

---

[1] The dissent argues that defendant is bound by the terms of the stipulated judgment until that judgment is set aside and that any objections to the terms of the lease merged into the stipulated judgment. It is correct that no appeal lies from a stipulated judgment under ORS 19.245 and that a litigant's federal claim may be foreclosed by the application of a state procedural rule. However, defendant does not appeal from the stipulated judgment. He appeals from the judgment that provides for restitution of the leased premises to plaintiff. Defendant does not make an impermissible "collateral attack" on the stipulated judgment, nor does he seek to avoid the effect of the judgment or of state procedural rules by his appeal. Rather, he relies on his stipulation as the basis for his claim of a leasehold interest, insisting only that it be read as incorporating the requirements of 42 USC § 1437d(l)(4) (1994) and its applicable rules. If he had moved successfully to vacate the judgment under ORCP 71, then he would have had no leasehold interest on which to oppose the efforts of plaintiff to evict him. This case is not about the doctrine of federal supremacy. Rather, it involves the interpretation of a lease that contains certain terms by operation of law and whether the trial court considered those terms as the required predicate for eviction.

without force. To the extent that plaintiff relies on the automatic "restitution" provision of the stipulated judgment, the trial court's eviction order is error.

The fact that the automatic restitution clause of the stipulated judgment is unenforceable does not vitiate the remainder of the terms of the judgment that express the conditions of the tenancy. The language of the federal regulations themselves suggest that only those "clauses" are prohibited, not that an entire lease agreement containing such terms is invalidated. Thus, the question remains whether the trial court could lawfully order defendant evicted after hearing the evidence in the case.

When defendant and his counsel appeared before the trial court on defendant's motion, defendant's counsel told the trial court:

> "[W]e believe that Mr. Asana complied with the agreement, until it was made impossible for him to do so by the Housing Authority and we also think that we can show, we know that we can show that he has complied with the spirit of this agreement by paying his rent."

The trial court responded:

> "Well I don't care about the rent. All I care about is whether he has complied with the stipulated judgment."

Defense counsel explained:

> "I understand, your honor, but we also believe that there is no basis for a notice of restitution here at all because there are two provisions of the stipulated agreement that they have claimed he hasn't complied with. *Even if he is in violation of those, they wouldn't constitute good cause*. This is Federally subsidized housing." (Emphasis added.)

The court reasoned otherwise:

> "I'm sorry, it's a stipulated judgment of this court and if he doesn't comply with it I don't care if he stipulated that he had to stand on his head, until his face turned blue, if he didn't do that then, he signed that agreement and he is out of the property."

After the trial court heard the evidence, it ruled, in part:

"And I think the Stipulated Judgment and the clear intent of it was that they have a way to make sure that [this] guy is in drug treatment and they have a way to monitor his situation and be certain that the problems are being addressed. And, for whatever reason, that wasn't done. Now, I guess I would say that if they made it impossible for him to comply by their action, throwing him, trespassing him from the building so he couldn't attend his meetings on Fridays at 10:00 a.m. and making other threats about eviction and so on, then I would say that you've got a good point that he should be excused from complying with that because they made his compliance impossible[.] [B]ut I think most of those, the breach on his part took place before those events took place. He didn't show up, I don't believe, on the 15th and I don't believe he showed up on the 22nd and those were clearly in breach of the agreement that he made with them on August 4th. And this dispute and flap that he had with them wasn't until August 25th where he may have been trespassed from the office[.] [B]ut I think he still had an ability to work with Arlene Gregory and provide evidence that he was doing drug treatment and I think they were still willing to do that even if he couldn't physically come to his 10:00 meetings on Fridays. And that fell apart sometime later in September, a week or two later[.] [T]hey said, you know, we're not going to accept your rent or we're not going to send you a rent statement because we are looking into this issue of the threat. But I don't think they interfered substantially prior to August 25th and I think he was in non-compliance at that point."

42 USC § 1437d(l)(4) (1994) requires that a public housing tenancy not be terminated "except for serious or repeated violation of the terms or conditions of the lease or for other good cause." The underlying public policy of the United States Housing Act of 1937 as embodied in 42 USC § 1437d (1994) is to protect tenants in publicly financed housing from arbitrary eviction. As one court has noted:

"The federal government, the states and the cities which have extended aid to low and middle income housing hardly expected that a tenant could be evicted at the end of his term simply at the landlord's whim, when substitute housing could be obtained, if at all, only with delay, disruption of

living habits and expense." *Lopez v. Henry Phipps Plaza S., Inc.*, 498 F2d 937, 943 (2d Cir 1974).

If Congress had intended that tenants could be evicted based only on the proof of a violation, then it would not have included the *additional* requirement of "good cause" in the statute.

■        On In this case, the trial court predicated its eviction order on a finding that defendant did not appear at appointments on August 15 and August 22 to discuss his drug treatment program as required by his lease. The trial court found that, "those [failures] were clearly in breach of the agreement that he made with them on August 4th." What is absent in the trial court's rulings are rulings about whether defendant's breaches were "repeated or serious" violations of the lease or whether he otherwise lacked "good cause" for missing the appointments. The trial court did consider whether plaintiff made it "impossible" for defendant to make the appointments. However, that consideration did not address the requirement of the statute that the court go beyond the occurrence of violations and examine their gravity. The fact that the lease was embodied in a stipulated judgment did not nullify the requirements of the statute. When plaintiff chose to stipulate to a new lease agreement with defendant rather than to seek eviction, it subjected itself to the import of the statute, and the statute became part of the conditions of the new lease as if the statute had been expressed in the judgment. In other words, plaintiff's ability to negotiate leasehold terms is circumscribed by the authority it operates under, and its leases are required to be read as if they incorporate the legal standards prescribed by 42 USC § 1437d. It follows that the trial court erred when it held that defendant was in violation of the lease embodied in the stipulated judgment merely because of evidence that on two occasions he missed appointments for drug abuse counseling.[2]

---

[2] The dissent contends that the trial court considered the issue of "good cause" under 42 USC § 1437d(1)(4) (1994) and that "good cause" for eviction exists as a matter of law on this record. The first conclusion is belied by the trial court's emphatic pronouncement to defendant's counsel that defendant "is out of the property" if the court finds that he did not strictly comply with his in-court stipulations. As to the assertion that "good cause" exists as a matter of law on this record, the record contains no suggestion that the trial court evaluated why defendant missed his appointments under the applicable statutes standard and no ruling that the

Reversed and remanded.

**KISTLER, J.,** dissenting.

The majority holds that plaintiff may not enforce a stipulated judgment because it authorizes eviction on less than good cause in violation of federal law. I respectfully disagree for two reasons. First, until defendant moves to set the stipulated judgment aside, he is bound by its terms. Second, the trial court's findings establish that defendant failed to comply with the terms of the stipulated judgment, and those terms constitute good cause for eviction within the meaning of federal law.[1]

Rather than evict defendant, plaintiff and defendant entered into an agreement, which was approved by the court and reduced to a stipulated judgment. The terms of the stipulated judgment require, among other things, that defendant work with family intervention specialists on issues related to drug abuse and that defendant begin individual counseling with a member of the drug elimination team. When defendant failed to begin drug counseling, plaintiff sought to evict him. Defendant responded that the terms of the stipulated judgment were inconsistent with federal law.

The majority reasons that the legal effect of the stipulated judgment was to create a new lease, which incorporated by operation of law the applicable provisions of the federal statutes and regulations. The terms of the applicable laws and regulations do not suggest that they have that effect. Rather, the federal statutes and regulations specify the kinds of requirements that shall and shall not be included in public housing leases. *See* 42 USC § 1437d(l)(4) (1994);[2]

---

eviction was necessary to eliminate illegal drugs from the premises. In contrast, the tenant in *Ritter v. Cecil Cty. Office of Hous. & Cmty. Dev.*, 33 F3d 323 (4th Cir 1994), did not challenge on appeal the finding that she violated the landlord's rule, as occurred in this case. Rather, she argued that her conceded violation could not be the basis of a termination as a matter of federal law.

[1] I agree, however, with the majority that other portions of the agreement that the stipulated judgment embodies are inconsistent with federal requirements. The agreement authorizes a confession of judgment in violation of the federal regulations, *see* 24 CFR § 966.6(a) (1997), and it also denies defendant the process that those regulations separately require, 24 CFR § 966.4(l)(2)(ii) (1997). The majority apparently concludes that the hearing the trial court provided made those procedural errors harmless in this case.

[2] Section 1437d(l)(4) (1994) provided that "[e]ach public housing agency shall utilize leases [that] require that the public housing agency may not terminate the

24 CFR § 966.6 (1997) (new leases shall not include clauses that require tenants to waive notice or confess judgment). Other portions of the federal regulations say nothing about the lease but specify the grounds on which a tenant may be evicted and the procedures for doing so. 24 CFR § 966.4(l)(2)(i) and (ii) (1997). If the majority were correct, then there would have been no need to specify in 24 CFR section 966.6 (1997) that certain lease provisions that are inconsistent with federal regulations "shall be deleted from existing leases *either by amendment thereof or execution of a new lease.*" (Emphasis added.) In my view, the federal law and regulations provide a standard against which leases may be tested, but their requirements are not automatically incorporated into a tenant's lease.[3]

Whatever federal objections defendant might have raised to the terms of the agreement were merged into the judgment to which he stipulated. Defendant could not have appealed from the stipulated judgment claiming that its terms violated federal law. *Russell v. Sheahan*, 324 Or 445, 454, 927 P2d 591 (1996). Nor may he bring a collateral challenge to its terms as a defense to eviction unless he first moves to set the judgment aside in accordance with ORCP 71. *See Ketchum v. Selles*, 304 Or 529, 535-36, 748 P2d 67 (1988); *State ex rel State Scholarship Com'n v. Magar*, 288 Or 635, 641-42, 607 P2d 167 (1980); *Niemen v. Pitzer*, 281 Or 53, 56, 573 P2d 1227 (1978). Defendant has not done that.[4]

---

tenancy except for serious or repeated violation of the terms or conditions of the lease or for other good cause[.]"

[3] The majority cites *Noble v. Bethlehem Housing Authority*, 617 F Supp 248 (ED Pa 1985), for the proposition that public housing leases should be "read as if the [legislatively required] clauses had been inserted in the lease." 165 Or App at 534. As I read that case, the district court held that the federal regulations set a standard that the public housing agency had to meet. *Noble*, 617 F Supp at 251. It does not address whether the lease in that case omitted terms that the federal regulations require, nor does it specifically address whether the federal requirements are automatically incorporated in a noncomplying lease.

[4] I agree with the majority that defendant is not seeking to set the stipulated judgment aside. I also agree that some portions of the stipulated judgment are inconsistent with federal regulations. *See* n 1 above. Plaintiff should not have proposed the agreement in the terms it did. Once, however, the trial court approved that agreement and reduced it to a stipulated judgment, the larger concern for finality of judgments requires that we respect the stipulated judgment until it is set aside. *See Restatement (Second) of Judgments* § 17, comment d (1982).

Federal law is, of course, supreme. But the state and federal courts have long recognized that a litigant's federal claims may be foreclosed by an independent and adequate state procedural rule. *Adams v. Robertson*, 520 US 83, 87, 117 S Ct 1028, 137 L Ed 2d 203 (1997); *Hathorn v. Lovorn*, 457 US 255, 262-63, 102 S Ct 2421, 72 L Ed 2d 824 (1982); *see Oregon Taxpayers United PAC v. Keisling*, 143 Or App 537, 924 P2d 853, *rev den* 324 Or 488 (1996), *cert den* 520 US 1252 (1997). Preservation rules are a familiar example. State preclusion rules are another. Although Congress may sometimes override otherwise independent and adequate state procedural rules, *see Longshoremen v. Davis*, 476 US 380, 393, 106 S Ct 1904, 90 L Ed 2d 389 (1986),[5] no intent to override the effect of a state court's judgment should be inferred unless Congress made that intent clear, *see Allen v. McCurry*, 449 US 90, 96-99, 101 S Ct 441, 66 L Ed 2d 308 (1980).[6] In my view, the federal rights accorded tenants of public housing do not supersede long-standing and systematically enforced state claim preclusion rules.

On the merits, the majority holds that plaintiff lacked good cause to evict defendant. As the majority recognizes, the trial court found that defendant failed to attend two appointments to discuss his drug treatment program and that those failures were clearly in breach of the terms of the stipulated judgment. The majority reasons, however:

"What is absent in the trial court's rulings are rulings about whether defendant's breaches were 'repeated or serious' violations of the lease or whether he otherwise lacked 'good cause' for missing the appointments. The trial court did

---

[5] The state court in *Longshoremen* had declined to reach the union's federal preemption claim because the union had not raised that claim as an affirmative defense to Davis' suit. 476 US at 385-86. The Court held that the union's federal preemption claim in that case was a claim that Congress had deprived the state court of the power to adjudicate the subject matter of the case. *Id.* at 393.

[6] The plaintiff in *Allen* filed suit pursuant to 42 USC § 1983 to relitigate a federal constitutional claim that he had lost in state court. 483 US at 91-92. The Court explained that in light of Congress' long recognition that state court judgments should be given preclusive effect, section 1983 should not be understood as abrogating the preclusive effect of those judgments unless Congress had made its intent to do so clear. *Id.* at 97-101.

consider whether plaintiff made it 'impossible' for defendant to make the appointments. However, that consideration did not address the requirement of the statute that the court go beyond the occurrence of violations and examine their gravity." 165 Or App at 538.

The majority's concern stems from the fact that the trial court did not decide whether plaintiff had good cause to evict defendant. Once, however, the trial court found as a matter of historical fact that plaintiff evicted defendant because he failed to attend the drug counseling sessions, the question whether that reason constitutes good cause for eviction within the meaning of the federal law presents a legal issue. *See Ritter v. Cecil Cty. Office of Hous. & Cmty. Dev.*, 33 F3d 323 (4th Cir 1994) (treating the issue as a question of law). The fact that the trial court did not expressly resolve that legal issue does not preclude us from doing so.

Defendant's failure to attend the drug counseling sessions constitutes good cause for eviction. Defendant acknowledged, by entering into the stipulated judgment, that he had "issues related to drug use" that needed to be addressed. The purpose of requiring him to undergo individual counseling was to reduce drug use within federally subsidized housing. Defendant's failure to attend those counseling sessions frustrates plaintiff's legitimate and substantial interest in eliminating illegal drugs from public housing. Defendant's failure to attend those counseling sessions is, in my view, of equal or greater weight than the examples of good cause that Justice Douglas listed in his concurring opinion in *Thorpe v. Housing Authority*, 386 US 670, 680, 87 S Ct 1244, 18 L Ed 2d 394 (1967).

I respectfully dissent.