ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| GARRIGA TRADING COMPANY, INC.<br><br>Apelante<br><br>v.<br><br>LILIANA RÍOS CRESPO; INTERNATIONAL GRAPHICS LLC<br><br>Apelados | KLAN202500345 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024CV11623<br><br>Sobre: *Injunction,* Incumplimiento Contractual, Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez

Sánchez Báez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de junio de 2025.

Compareció la compañía Garriga Trading Company, Inc. (en adelante, "Garriga Trading" o "apelante") mediante recurso de apelación presentado el 22 abril de 2025. Nos solicitó la revocación de *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "foro primario"), el 3 de abril de 2025 y notificada en igual fecha. En ese dictamen, el foro primario declaró *ha lugar* la solicitud de desestimación por falta de jurisdicción sobre la materia.

Por los fundamentos que expondremos a continuación, **se confirma** la *Sentencia* apelada.

**-I-**

---

[1] Mediante la Orden Administrativa DJ 2024-062C emitida el 6 de mayo de 2025, se enmendó la constitución de los paneles del Tribunal de Apelaciones.

El 20 de diciembre de 2024, Garriga Trading presentó *Demanda y Petición de Injunction Preliminar y Permanente*[2] sobre injunction, incumplimiento contractual y daños y perjuicios, contra la Sra. Liliana Ríos Crespo (en adelante, "señora Ríos Crespo") e International Graphics, LLC (en adelante, "International Graphics") (en conjunto, "apeladas"). Alegó que la señora Ríos Crespo fue su empleada y, por ello, suscribieron un *Acuerdo de No-Competencia*[3] por doce (12) meses a partir del cese de su empleo. Además, adujo que la señora Ríos Crespo incumplió con los términos y condiciones del referido acuerdo al iniciar una relación de empleo con Internacional Graphics. Razón por la cual, reclamó daños por incumplimiento contractual e interferencia torticera.

Tras unos incidentes procesales, el 13 de enero de 2025, Garriga Trading presentó *Moción urgente solicitando que se permita emplazar por edicto* a la señora Ríos Crespo.[4]

Al día siguiente, el 14 de enero de 2025, International Graphics presentó *Oposición a: "Moción urgente solicitando que se permita emplazar por edicto"*.[5] En síntesis, argumentó que el foro primario carecía de jurisdicción sobre la materia, toda vez que el *Acuerdo de No-Competencia* que se alegó fue incumplido, está en disputa ante la National Labor Relations Board (en adelante, "NLRB"). A saber, sostuvo como sigue: "[...] dado que la NLRB tiene jurisdicción primaria para determinar si el acuerdo de no competencia es válido bajo la Sección 7 de la NLRA, cualquier procedimiento judicial en el cual se solite hacer valer dicho acuerdo, es prematuro".[6]

El 15 de enero de 2025, Garriga Trading presentó *Réplica a oposición a moción urgente solicitando que se permita emplazar por*

---

[2] Apéndice del apelante, págs. 1-45.
[3] *Íd.,* págs. 13-16.
[4] *Íd.,* págs. 100-109.
[5] *Íd.,* págs. 113-117.
[6] *Íd.,* pág. 116.

*edicto.*[7] En contraposición, argumentó que el asunto ante la NLRB era una mera investigación abierta en aras de determinar si el *Acuerdo de No-Competencia* viola la Sección 7 de la Ley Nacional de Relaciones de Trabajo (en adelante, por sus siglas en inglés, "NLRA") y, si procede un *complaint o unfair labor practice charge* en su contra. Sostuvo que no estaba ventilándose un procedimiento adjudicativo ante un *Administrative Law Judge* en la NLRB.

En respuesta, el 16 de enero de 2025, International Graphics presentó *Dúplica*[8] mediante la cual alegó que la reclamación de Garriga Trading está condicionada a la validez del *Acuerdo de No-Competencia* y tal controversia se encuentra en un proceso administrativo en curso ante la NLRB. Por tanto, reafirmó que el foro primario carece de jurisdicción sobre la materia hasta tanto la NLRB haga su determinación.

El 17 de enero de 2025, el foro primario emitió varias *Órdenes*, en lo aquí pertinente, dispuso que la defensa de falta de jurisdicción sobre la materia seria atendida cuando adquiera jurisdiccion sobre la señora Ríos Crespo.[9]

El 22 de enero de 2025, International Graphics presentó *Moción Informativa sobre Comunicación de National Labor Relations Board a Garriga Trading Company*[10], mediante la cual informó al foro primario que, el 21 de enero de 2025, la NLRB —a través de una carta firmada por el director regional, David Cohen— le comunicó a Garriga Trading lo siguiente:

> As you may know, our Region is currently investigating the above charge filed by Liliana María Ríos Crespo which alleges the Garriga Trading Co., Inc d/b/a Garriga Paper (the Employer) is violating the National Labor Relations Act (the Act) by, *inter alia*, maintaining and enforcing an unlawful non-competition agreement and terminating the employment of Liliana María Ríos Crespo based on the unlawful non-competition agreement. If allegation in the charge are determined to be meritorious, the

---

[7] *Íd.,* págs. 118-121.
[8] *Íd.,* págs. 122-124.
[9] *Íd.,* pág. 130.
[10] *Íd.,* págs. 132-145.

remedies may include an order requiring the Charged Party to rescind the agreement at issue, cease and desist from any enforcement efforts, and compensate Liliana María Ríos Crespo for all costs that are a direct or foreseeable result of the non-competition agreement, including all costs incurred by her as a result of enforce the non-competition agreement.

Accordingly, if the Employer does not stay or dismiss the lawsuit it filed against Liliana María Ríos Crespo in the Estado Libre Asociado de Puerto Rico, Tribunal de Primera Instancia, Centro Judicial de San Juan Sala Superior, it could accrue liability under Section 8(a)(1) of the Act for the continued maintenance of the lawsuit in its current form.

I am enclosing the NLRB General Counsel's Memorandum 23-08, Non-Compete Agreements that Violate the National Labor Relations Act, which has also been interpreted to encompass other agreements, provisions, or policies that restrict mobility, such as training repayment provisions, and other stay-or-pay provisions.[11]

Luego de varios trámites procesales, el 15 de febrero de 2025, Garriga Trading instó *Moción informativa y/o para que se tome conocimiento judicial*.[12] Allí informó que, el 14 de febrero de 2025, el Sr. William B. Cowen —actual *Acting General Counsel* de la NLRB— a través del Memorando GC-25-05 rescindió el Memorando GC 23-08 sobre acuerdos de no competencia. Ante ello, sostuvo que no procede la defensa de falta de jurisdicción sobre la materia.

Asimismo, el 18 de febrero de 2025, International Graphics presentó *Réplica [a] "Moción informativa y/o para que se tome conocimiento judicial"*.[13] Adujo que la rescisión del Memorando GC 23-08 no enmendó la NLRA ni modificó el principio de jurisdicción primaria. Por lo cual, señaló que la NLRB tiene la facultad de investigar y evaluar los cargos bajo la Sección (8)(1) de la NLRA debido a la posibilidad de que el *Acuerdo de No-Competencia* afecte derechos protegidos bajo la NLRA y ello en nada dependía de las prioridades administrativas del Memorando GC 23-08.

Tras varias gestiones procesales, el 12 de marzo de 2025, la señora Ríos Crespo instó *Moción de desestimación por falta de*

---

[11] *Íd.,* pág. 135.
[12] *Íd.,* págs. 184-188.
[13] *Íd.,* págs. 189-190.

*jurisdicción sobre la materia al amparo de la regla 10.2(1).*[14] Argumentó que hasta que la NLRB no resuelva si el *Acuerdo de No-Competencia* es válido o si interfiere con sus derechos protegidos, el foro primario está impedido de adjudicar la controversia y carece de jurisdicción sobre la materia. Por tanto, sostuvo que el único curso de acción que puede tomar el foro primario es desestimar la demanda incoada en su contra.

El 14 de marzo de 2025, Garriga Trading presentó *Dúplica a réplica de International Graphics y oposición a moción de desestimación de Ríos.*[15] Alegó que la investigación ante la NLRB es un asunto distinto y separado a los planteamientos de la *Demanda* del caso de epígrafe ante el foro primario. En síntesis, señaló que la referida *Demanda* busca poner en vigor un contrato que cumple con los requisitos del Código Civil de Puerto Rico y su jurisprudencia. Además, sustentó que la parte que alega falta de jurisdicción de los tribunales estatales debe demostrar que su caso es uno que la NLRB podría resolver a su favor.

Luego de la presentación de múltiples mociones innecesarias pormenorizar, el 3 de abril de 2025, el foro primario emitió y notificó una *Sentencia*[16] mediante la cual desestimó **sin perjuicio** la *Demanda* y todas sus causas de acción por el fundamento de falta de jurisdicción sobre la materia. En particular, dispuso como sigue:

> [E]n el presente caso, según bien argumenta la Sra. Ríos, carecemos de jurisdicción para entender en el presente caso. Esto, debido a que actualmente la NLRB está llevando a cabo una investigación para determinar si el acuerdo de no competencia en controversia en este caso viola las disposiciones de la NLRA. Por tal razón, es forzoso concluir que en este caso la NLRB merece la deferencia que tanto la Corte Suprema de los Estados Unidos, así como nuestro más alto foro han reconocido.
>
> Por último, aun si partiéramos de la premisa que le asiste la razón a la parte demandante al exponer que la Sra. Ríos no ha demostrado que existe una probabilidad de prevalecer ante la NLRB, nuestro Tribunal Supremo ha resuelto que tener dos foros distintos de manera simultánea dos casos

---

[14] *Íd.,* págs. 212-218.
[15] *Íd.,* págs. 219-222.
[16] *Íd.,* págs. 247-261.

que versan sobre la misma controversia no contribuye a la economía procesal, y abre la puerta a la posibilidad de resultados contradictorios.[17]

Inconforme con lo anteriormente resuelto, el 22 de abril de 2025, Garriga Trading acudió ante este Tribunal mediante el recurso de epígrafe en el cual señaló los errores siguientes:

Erró el TPI al declararse sin jurisdicción sobre la materia y desestimar el pleito.

Erró el TPI al, no obstante reconocer que la jurisprudencia federal exige que la parte que alegue que el tribunal carece de jurisdicción demuestre que existe una posibilidad de prevalecer ante la NLRB, resolver que no es conveniente por economía procesal tener dos foros de forma simultánea examinando una controversia similar, en circunstancias en que Garriga, siendo este un pleito extraordinario de *injunction,* necesita un remedio rápido ante la magnitud de los daños irreparables e irreversibles que las partes demandadas en contubernio le están ocasionando.

Erró el TPI al mostrarse impráctico y con ningún sentido de justicia ante las circunstancias que presentan la *Demanda* y las mociones que tuvo ante sí previo a desestimar el caso, al efecto de que la codemandada Ríos, en contubernio con la codemandada IG, han extendido por casi 7 meses de los 12 que tiene el contrato violado de no competencia los daños a Garriga, provocando la desestimación decretada que el contrato se haga sal y agua en el término de le queda de vigencia.

Erró el TPI al no señalar vista de *injunction* preliminar y demorarse excesivamente en adjudicar las mociones pendientes en un caso extraordinario de *injunction* que se presentó en diciembre de 2024, luego de que las gestiones extrajudiciales de Garriga para evitar el pleito fueran menospreciadas por las demandadas.

Por su parte, el 9 de mayo de 2025, International Graphics presentó su alegato. Asimismo, el 21 de mayo de 2025, la señora Ríos Crespo presentó su alegato en oposición.

Con el beneficio de la comparecencia escrita de todas las partes, procedemos a exponer la normativa jurídica aplicable a la controversia ante nuestra consideración.

**-II-**

**A. Jurisdicción exclusiva de la NLRB**

En nuestro ordenamiento jurídico se ha establecido que la jurisdicción "es el poder o la autoridad que tiene un tribunal para

---

[17] *Íd.,* pág. 261.

considerar y decidir casos o controversias que tiene ante sí". *R&B Power Inc., v. Junta de Subasta,* 213 DPR 685, 698 (2024); *FCPR V. ELA et al.,* 211 DPR 521, 529 (2023). En ese sentido, el factor jurisdiccional es el primer factor que debe considerar un tribunal en toda situación jurídica que se presente para su adjudicación. *R&B Power Inc., v. Junta de Subasta,* supra, pág. 698; *FCPR V. ELA et al.,* supra, pág. 530. De manera que los asuntos jurisdiccionales son privilegiados y deben ser atendidos de forma preferente. *Allied Mgmt. Group v. Oriental Bank,* 204 DPR 374, 386 (2020). Acorde con ello, los tribunales estamos emplazados a ser fieles guardianes de nuestra jurisdiccion y carecemos de discreción para asumirla donde no la hay. *Íd.*

Ahora bien, como norma general, los tribunales estatales tienen jurisdicción o autoridad para atender todo asunto al amparo de las leyes estatales y jurisdicción concurrente con los tribunales federales para atender asuntos que surjan bajo el palio de las leyes federales. *González v. Mayagüez Resort & Casino,* 176 DPR 848, 856 (2009); *Tafflin v. Levitt,* 493 US 455 (1990). No obstante, el gobierno federal ostenta jurisdicción exclusiva sobre asuntos de derecho federal cuando el Congreso así lo dispone expresamente, o cuando es clara su intención de privar a los tribunales estatales de autoridad sobre ese asunto federal. *González v. Mayagüez Resort & Casino,* supra, pág. 856; *Rodríguez v. Overseas Military,* 160 DPR 270, 277 (2003); *Yellow Freight System, Inc. v. Donnelly,* 494 US 820, 823 (1990).

En vista de lo anterior, el Congreso de los Estados Unidos reconoció, mediante la *Labor Management Relations Act of 1947,* 29 USCA sec. 141 *et seq.,* también conocida como, *Ley Taft-Hartley* (en adelante, "NLRA" o "*Ley Taft-Hartley*"), jurisdicción exclusiva a la Junta Nacional de Relaciones Laborales (en adelante, "NLRB") para resolver controversias que involucren prácticas ilícitas del trabajo

conforme dicha legislación. 29 USCA sec. 160; *González v. Mayagüez Resort & Casino*, supra, pág. 858; *Garner v. Teamsters Union*, 346 US 485 (1953). Asimismo, reconoció la aplicación de la doctrina de campo ocupado a la reglamentación de la actividad protegida por la Sec. 7 —de la NLRA— o cuando la regulación estatal entra en conflicto con la intención del Congreso. *González v. Mayagüez Resort & Casino*, supra, pág. 858. En particular, la referida Sec. 7 dispone lo siguiente:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

29 USCA sec. 157.

Es decir, la Sec. 7 de la NLRA reconoce el derecho de los empleados a organizase y participar en actividades concertadas con el propósito de negociar colectivamente o de obtener un beneficio mutuo. En armonía con lo anterior, la Sec. 8 de la NLRA prohíbe a los empleadores realizar ciertas prácticas ilícitas de trabajo que interfieran con el ejercicio de derechos protegidos por la Sec. 7 de dicha ley. 29 USCA sec. 158 (a)(1).

El Tribunal Supremo de los Estados Unidos, en *San Diego Building Trades Council v. Garmon*, 359 US 236, 245 (1959), estableció que "[w]hen an activity is arguably subject to §7 or §8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board".

Recientemente, el Tribunal Supremo de los Estados Unidos interpretó la doctrina de Garmon y señaló como sigue:

> Sometimes a party to a labor dispute goes directly to a court—raising the specter that state law will say one thing about the conduct underlying the dispute while the NLRA says another. It is a bedrock rule, of course, that federal law preempts state law when the two conflict. U. S. Const., Art. VI, cl. 2. Preemption under the NLRA is unusual, though,

because our precedent maintains that the NLRA preempts state law even when the two only *arguably* conflict.

*Glacier Northwest, Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 US 771, 776 (2023).

Además, explicó que la doctrina de Garmon estableció que "States cannot regulate conduct "that the NLRA protects, prohibits, or arguably protects or prohibits." *Íd.*, citando a *Wis. Dep't of Indus., Labor & Human Rels. v. Gould, Inc.*, 475 US 282, 286 (1986). A su vez, el Tribunal Supremo Federal reconoció lo siguiente:

> It requires more than "a conclusory assertion" that the NLRA arguably protects or prohibits conduct. *Ibid.* "[A] party asserting pre-emption must advance an interpretation of the [NLRA] that is not plainly contrary to its language and that has not been 'authoritatively rejected' by the courts or the Board." *Id.*, at 395, 106 S. Ct. 1904, 90 L. Ed. 2d 389. The party must then "put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such an interpretation." *Ibid.*
>
> If the court determines that the party has met its burden to show that "there is an arguable case for pre-emption," it generally must grant the party's preemption defense and await the Board's resolution of the legal status of the relevant conduct. *Id.*, at 397, 106 S. Ct. 1904, 90 L. Ed. 2d 389. After that, "only if the Board decides that the conduct is not protected or prohibited [by the NLRA] may the court entertain the litigation." *Ibid.* "[W]hen properly invoked," *Garmon* thus "tells us not just what law applies (federal law, not state law) but who applies it (the National Labor Relations Board, not the state courts or federal district courts)." *Trollinger v. Tyson Foods, Inc.*, 370 F. 3d 602, 608 (CA6 2004).

*Glacier Northwest, Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, supra, págs. 776-777.

A nivel de Puerto Rico, nuestro Máximo Foro ha interpretado el desplazamiento del NLRA de manera similar. Así, por ejemplo, reconoció en *González v. Mayagüez Resort & Casino*, supra, que la NLRB posee jurisdicción exclusiva para resolver controversias que involucran una práctica ilícita del trabajo según definidas en la NLRA. Además, dispuso que "hay jurisdicción exclusiva de la [NLRB] sobre actividades protegidas por la Sec. 7 [de la NLRA] o que constituyen una práctica ilícita del trabajo según la Sec. 8 (29 USCA sec. 158)". *Íd.,* pág. 859. No obstante, señaló que un "tribunal o una agencia estatal puede ejercer su jurisdicción sobre disputas obrero-patronales cuando la agencia federal decline ejercitar su autoridad".

*Íd.*, pág. 860. Enfatizó que, para auscultar la autoridad o jurisdicción de un tribunal local, es necesario examinar si la conducta según alegada "está sujeta a ser sancionada por la Ley Taft-Hartley...". *Íd.*, pág. 862. Resaltó, a su vez, que "el análisis de desplazamiento se efectúa tomando en consideración *el tipo de conducta involucrada y no la naturaleza del remedio solicitado*". *Íd.*; citando *Díaz Arroyo v. Hosp. Susoni*, 169 DPR 53, 64 (2006)(opinión de conformidad de la Jueza Asociada Señora Rodríguez Rodríguez, a la que se unió el Juez Presidente Señor Hernández Denton)(énfasis en el original).

De igual forma, el Tribunal Supremo recientemente resolvió *Rodríguez Vázquez, Santana Marrero v. Hospital Español Auxilio Mutuo*, 2025 TSPR 55, 215 DPR ___ (2025) en el cual reiteró que en el análisis de si aplica la jurisdicción exclusiva de la NLRB, se debe efectuar a la luz del "tipo de conducta involucrada y no la naturaleza del remedio solicitado". *Rodríguez Vázquez, Santana Marrero v. Hospital Español Auxilio Mutuo*, supra, pág. 20. (Énfasis en el original). Así pues, "cuando los hechos alegados por el demandante **son (o se podrían argumentar que son) actos** de práctica ilícita según la NLRA, ni los tribunales estatales ni los federales tienen jurisdicción". *Íd.*, pág. 21. Además, en su discusión, el Tribunal Supremo invitó a los tribunales a:

> [...] apreciar si la parte que sostiene la prelación de la NLRA constató que los hechos alegados por el demandante son o se podría argumentar que son actos de práctica ilícita según el NLRA. De ser así, los tribunales deberán aplicar la doctrina de campo ocupado y desestimar la reclamación. Solo si la Junta Nacional decide que la conducta no está protegida o prohibida por la NLRA, es que los tribunales locales posteriormente podrían justipreciar la controversia.

*Íd.*, págs. 21-22.

Asimismo, el Tribunal Supremo señaló que, si las alegaciones denuncian actos de práctica ilícita bajo la NLRA, que de ser ciertas y probadas esas conductas, la NLRB podría concluir que recae su la jurisdicción exclusiva *Íd.*, págs. 28-29.

Así pues, al realizar nuestra tarea adjudicativa, es irrelevante la consideración de si el fundamento de las reclamaciones es alguna ley local. Por el contrario, la clave para nuestra tarea de determinar a cuál foro corresponde atender la controversia consiste en examinar la conducta involucrada, según fue alegada.

Discutido el derecho aplicable, este Tribunal se encuentra en posición para disponer del recurso de autos.

**-III-**

En el presente caso, el apelante alegó que el foro primario incidió al declararse sin jurisdicción sobre la materia, toda vez que la NLRB no cuenta con autoridad para fiscalizar el *Acuerdo de No-Competencia* y máxime cuando la señora Ríos Crespo fungía como un alto gerencial en Garriga Trading. Sobre esto último, añadió que la señora Ríos Crespo era la Vicepresidenta de Negocios, concretamente *Vicepresident Signage and Industrial* y, por ello, señaló que no era un obrera cobijada por la NLRA. Además, adujo que las apeladas no demostraron que tenían posibilidades reales de prevalecer ante la NLRB, según requiere la jurisprudencia. Por lo cual, nos solicitó la revocación de la *Sentencia* apelada.

Por su parte, International Graphics argumentó que el foro primario actuó correctamente al desestimar la *Demanda* y reconocer que existe un procedimiento ante la NLRB en el que se está evaluando la validez del *Acuerdo de No-Competencia*. A su vez, sostuvo que tal acuerdo constituye el eje central de la controversia en el caso de epígrafe e intervenir en un asunto sujeto a la jurisdicción primaria de una agencia federal contraviene la doctrina de *preemption*.

De otro lado, la señora Ríos Crespo adujo que los hechos esenciales y materiales de la reclamación del apelante se encuentran en evaluación ante la NLRB, quien conforme a su ley habilitadora y

jurisprudencia aplicable —tanto federal como local— ostenta jurisdicción primaria para atender el asunto de autos.

En síntesis, la controversia principal ante nosotros es si el foro primario tiene autoridad para atender una reclamación de un patrono que solicita un remedio al amparo de la legislación local, cuando existen de manera concurrente unos asuntos ante la NLRB relacionados a la aplicación de la NLRA y su posible violación. Resolvemos en la negativa. Veamos.

En primer lugar, consideramos las alegaciones de la señora Ríos Crespo en su reclamación ante la NLRB —FORM NLRB-501 (3-21) conocido como *First Amended Charge Against Employer*—, a saber:

> On or about September 20, 2024, the Employer interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining and enforcing an unlawful non-competition agreement and terminating the employment of Liliana María Ríos Crespo based on this unlawful non-competition agreement.

> On or about October 14, 2024, the Employer interfered with, restrained, and coerced its employees in the exercise of rights protected by Section 7 of the Act by maintaining, enforcing, and promulgating an employee handbook containing unlawful and/or overly broad confidential rules and non-disclosure rules.[18]

En otras palabras, las alegaciones de la señora Ríos Crespo ante la NLRB consisten en que el *Acuerdo de No-Competencia* constituye una práctica laboral injusta conforme a la Sec. 8 (a)(1) de la NLRA, al interferir con el ejercicio de derechos protegidos por la Sec. 7 de la misma ley.

Segundo y más importante, nótese que la NLRB reconoció mediante una comunicación dirigida a Garriga Trading que está "currently investigating the above charge filed by Liliana María Ríos Crespo".[19] Explicó, además, que "[i]f the allegations in the charge are determined to be meritorious, the remedies may include an order

---

[18] Apéndice del apelante, pág. 218.
[19] *Íd.,* pág. 135.

requiring the Charged Party to rescind the agreement at issue".[20] Asimismo, advirtió al apelante como sigue:

> [...] if the Employer does not stay or dismiss the lawsuit it filed against Liliana María Ríos Crespo in the Estado Libre Asociado de Puerto Rico, Tribunal de Primera Instancia, Centro Judicial de San Juan Sala Superior, it could accrue liability under Section 8(a)(1) of the Act for the continued maintenance of the lawsuit in its current form.

Así pues, podemos sostener que la NLRB se encuentra en el proceso de evaluar si el *Acuerdo de No-Competencia* es válido o si sus términos y condiciones constituyen una violación o interferencia con los derechos laborales federales de la señora Ríos Crespo. Además, podemos afirmar que la NLRB tiene conocimiento de la *Demanda* judicial presentada por Garriga Trading en el foro primario y que le exhortó a este último, a desistir de tal reclamación. Le enfatizó, a su vez, que incumplir con lo anterior podría conllevar una violación a la Sec. 8 (a)(1) de la NLRA. Por tanto, es evidente que estamos ante una conducta que posiblemente podría estar sujeta a ser sancionada por la NLRA.

Conforme explicamos en el acápite II de esta *Sentencia,* según la doctrina establecida en *San Diego Building Trades Council v. Garmon,* supra, los tribunales estatales debemos abstenernos de intervenir en asuntos que estén meramente "arguably" cubiertos por la NLRA, incluso si el caso aún no ha sido atendido por NLRB. En tal caso, lo que nos corresponde es aplicar la doctrina de campo ocupado y desestimar la causa de acción. Véase, *Glacier Northwest, Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, supra; *González v. Mayagüez Resort & Casino*, supra; y *Rodríguez Vázquez, Santana Marrero v. Hospital Español Auxilio Mutuo,* supra. Más importante aún, explicamos que solo podemos ejercer nuestra jurisdicción en la medida que el NLRB decline ejercitar su autoridad o concluya que la conducta alegada no está protegida o prohibida por la NLRA. *Íd.*

---

[20] *Íd.*

El caso ante nuestra consideración no tan solo cumple con la posibilidad de ser sancionado por la NLRA, sino que sobrepasa el referido estándar requerido por la jurisprudencia aplicable. Ello, en la medida que existe una carta firmada por el director regional de la NLRB que confirma que se encuentran investigando las alegadas prácticas ilícitas relacionadas con el *Acuerdo de No-Competencia.*

Por ello, concluimos que el foro primario actuó correctamente al desestimar sin perjuicio el caso de epígrafe hasta tanto la NLRB emita una determinación sobre el asunto ante su consideración. Por el contrario, permitir que el foro primario atienda en sus méritos la reclamación incoada por Garriga Trading, mientras la NLRB evalúa la legalidad o validez del *Acuerdo de No-Competencia,* implicaría un conflicto directo entre decisiones estatales y federales, y ello atentaría contra la uniformidad de la política pública laboral. Además, contraviene la normativa establecida por jurisprudencia estatal y federal discutida previamente.

No obstante, aclaramos que ni la *Sentencia* apelada ni la presente *Sentencia* debe entenderse como una adjudicación en los méritos de la controversia alegada en la *Demanda.* En este caso, el foro primario desestimó **sin perjuicio** la *Demanda* y nosotros —como Tribunal revisor— meramente confirmamos el dictamen apelado, toda vez que no han concluido los procedimientos ante la NLRB. Una vez ello culmine, la parte interesada podrá, de así entenderlo pertinente, presentar una nueva causa de acción conforme a su debido proceso de ley y, el foro primario estará en posición de ejercer su autoridad adecuadamente a la luz de los hechos que existan para entonces.[21]

---

[21] Por último, nos parece meritorio resaltar que en el *Alegato* del apelante constan unas expresiones realizadas por el Lcdo. Daniel Quiles Pumarejo en torno a que la adjudicación del foro primario fue "sacado de la manga" y que "se amarró las manos". Véase, Alegato del apelante, págs. 4, 17 y 19. Le recordamos al Lcdo. Daniel Quiles Pumarejo que todo abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto y, le exhortamos a ejercer suma reflexión y cuidado en sus escritos futuros.

**-IV-**

Por los fundamentos previamente expuestos, se **confirma** la S*entencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones